Chester I. GEORGE, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 86–3338.

United States Court of Appeals,
Eleventh Circuit.

June 19, 1987.

Carroll S. Barco, Orlando, Fla., for plaintiff-appellant.

Roger M. Olsen, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., Michael L. Paup, Chief, Appellate Section, Kendell W. Wherry, Asst. U.S. Atty., Orlando, Fla., Richard Farber, Robert S. Parish, Jr., Tax Div. Dept. of Justice, Washington, D.C., Robert S. Parish Jr., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before ANDERSON and CLARK, Circuit Judges, and SIMPSON *, Senior Circuit Judge.

* Judge Simpson did not participate in the decision of this case and the decision is by quorum. 28 U.S.C. § 46; Circuit Rule 3.

1. Section 6672(a) provides:
Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to

CLARK, Circuit Judge:

This is an appeal by the taxpayer, Chester I. George, from a district court order granting the government's motion for directed verdict. The district court found that George was a "responsible person" within the meaning of § 6672 of the Internal Revenue Code of 1954 who willfully failed to collect or pay over to the United States government the federal employment taxes withheld from employees' paychecks. We reverse the district court order because we find that the issue of George's willfulness should have been decided by the jury.

I. PROCEEDINGS

The taxpayer, Chester I. George, filed suit to recover $100 which he had paid on a penalty of $26,513.61 assessed against him pursuant to § 6672 of the Internal Revenue Code of 1954 [1] for failure to collect and pay over federal employment taxes withheld from the wages of the employees of Peninsula Marketing Associates, Inc. (Peninsula) during the last two quarters of 1978 and the first, second and fourth quarters of 1979. The government filed a counterclaim against the taxpayer for the unpaid balance of the deficiency amounting to $26,413.61 plus interest. The government joined George's associate, Norman Rothbaum, as a third-party defendant on the counterclaim and sought from him $26,513.61 plus interest. Rothbaum failed to appear and a default judgment was entered against him in favor of the government.

The case was tried before a jury on March 19, 1986. After George rested his case, the government moved for a directed verdict, which was granted by the district court on March 20, 1986. Evidence was submitted on the government's counterclaim, and the district court determined

evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.
26 U.S.C. § 6672(a) (1982).

that the government was entitled to the assessed amount. The district court issued an amended order on April 4, 1986, dismissing George's complaint with prejudice and awarding judgment in favor of the government on its counterclaim. On April 25, 1986, the district court denied George's motions for a new trial and for other relief.

## II. FACTS

The facts relevant to this appeal are largely undisputed. During 1974–75, George and Rothbaum began a partnership for the purpose of conducting a wholesale marketing business, which they subsequently incorporated in Florida under the name of Peninsula Marketing Associates, Inc. (Peninsula). Rothbaum was president and George was vice-president of the company, and each owned fifty percent of the stock. Rothbaum's responsibilities included managing the office located near his home in Ft. Lauderdale, and maintaining the company's books and bank accounts. George, who lived in Orlando, had primary responsibility for the sales aspect of the business. Both men were signatories on the corporate checking accounts and could draw checks individually. Rothbaum retained the corporate checkbook and signed all checks, primarily because of his proximity to the corporate office. Rothbaum sent George blank checks to use when he needed funds, which George kept in a safe at home.

In March, 1980, Rothbaum agreed to purchase George's interest in Peninsula for $100,000, to be paid in quarterly installments of $2,500, and to retain George as a salesman on a commission basis. The agreement became effective April 1, 1980. George testified that he was not authorized to sign corporate checks after this date. Record, Vol. III at 20. It is unclear whether George learned that Peninsula's taxes had not been paid prior to his departure as a principal of the company.

Pursuant to the agreement with Rothbaum, George worked as a salesman for Peninsula from April 1 until mid-August, 1980. George testified that in August he became annoyed with Rothbaum because he had not received all of the commissions or quarterly payments due him, and was unable to meet his household expenses. *Id.* at 18. George stated that he subsequently contacted five manufacturers represented by Peninsula and explained his situation. The manufacturers agreed to do business directly with George, and not Peninsula, in Northern Florida. George testified that he expected to receive $40,000 in future gross income from these five accounts. *Id.* at 18–19.

Peninsula collapsed in late 1980. When the IRS failed to collect the delinquent taxes from Peninsula, it assessed George and Rothbaum $26,513.61 under I.R.C. § 6672.

On October 30, 1981, George sued Rothbaum and Peninsula in the Circuit Court of the Ninth Judicial Circuit for Orange County, Florida for breach of their business separation agreement. On November 2, 1981, George recorded a notice of lis pendens on a condominium jointly owned by him and Rothbaum. A settlement was negotiated whereby Rothbaum would quitclaim his interest in the condominium to George, subject to the outstanding mortgage, in exchange for George assigning all of his rights in Peninsula, including the unpaid commissions, to Rothbaum. The condominium was transferred by quitclaim deed on May 18, 1982. However, the government had issued a notice of tax lien against Rothbaum's interest in the condominium prior to this date on April 14, 1982, and against George's interest on May 10, 1982.

## III. DISCUSSION

George challenges (1) the district court order granting the government's motion for a directed verdict on the issues of responsibility and willfulness; (2) the accuracy of the assessment; and (3) the sufficiency of the evidence supporting both the initial and amended district court orders.

### A. *Liability*

A motion for directed verdict should be granted only when, viewing the evidence as

a whole and drawing all reasonable inferences in favor of the non-moving party, reasonable jurors could not reach a contrary verdict. *Dancey Co., Inc. v. Borg-Warner Corp.*, 799 F.2d 717, 719 (11th Cir.1986); *Hewitt v. United States*, 377 F.2d 921, 924 (5th Cir.1967).[2]

■ George's liability for the unpaid taxes is predicated upon his being a "responsible person" within the meaning of § 6672 who willfully failed to turn over to the government federal employment taxes withheld from employees' paychecks.[3] Liability may be imposed only upon (1) a responsible person, who has (2) willfully failed to perform a duty to collect, account, or pay over the taxes. *Mazo v. United States*, 591 F.2d 1151, 1153 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). We review the evidence to determine whether, drawing all reasonable inferences in the taxpayer's favor, a reasonable jury would have been required to find that George satisfies both of these conditions.

### 1. *Responsible Person*

■ A responsible person within the meaning of § 6672 includes an officer or employee of a corporation who is under a duty to collect, account for, or pay over the withheld tax. *Mazo*, 591 F.2d at 1153. Responsibility is a "matter of status, duty and authority, not knowledge." *Id.* at 1156. Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. It is undisputed that more than one person may be a "responsible person" for an employer. *Roth v. United States*, 779 F.2d 1567, 1571 (11th Cir.1986).

The district court found George to be a responsible person because he admitted to being a vice-president, director and fifty percent shareholder of the corporation. Also, George testified that he was a signatory on the corporate bank account and had blank checks in his possession. Record, Vol. III at 39, 48. Furthermore, George had the ability to hire and fire employees. Under these facts, we conclude as a matter of law that the appellant was a responsible person within the meaning of the statute. Rothbaum's role in managing most of the corporation's financial affairs does not detract from George's duty as an officer, director and shareholder to insure that the withheld taxes be paid to the government. Thus, the issue of responsibility did not need to be presented to the jury, and was properly decided by the district court.

### 2. *Willfulness*

■ Once it is established that a taxpayer is a responsible person, the burden of proving lack of willfulness is on the taxpayer. *Mazo*, 591 F.2d at 1155. The Supreme Court has ruled that § 6672 precludes the imposition of liability without personal fault. *Slodov v. United States*, 436 U.S. 238, 255, 98 S.Ct. 1778, 1788, 56 L.Ed.2d 251 (1978). Within this parameter, the term willfulness has been interpreted broadly to encompass a range of actions by responsible persons. In *Mazo*, the former Fifth Circuit defined "willfully" as "meaning, in general, a voluntary, conscious and intentional act." *Mazo*, 591 F.2d at 1154. The willfulness requirement is met if the responsible person prefers other creditors to the government, or shows a "reckless disregard of a known or obvious risk that trust funds may not be remitted to the government such as by failing to investigate or to correct mismanagement after

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**3.** Although the statute refers to "[a]ny person required to collect, truthfully account for *and*

pay over any tax imposed by this title," the Supreme Court has interpreted these three obligations as disjunctive. *Slodov v. United States*, 436 U.S. 238, 246–49, 98 S.Ct. 1778, 1785, 56 L.Ed.2d 251 (1978). Thus, the responsible person may willfully fail to collect, account for, *or* pay over the taxes at issue.

being notified that withholding taxes have not been duly remitted." *Id.* (citation omitted). In another former Fifth Circuit case, *Hewitt v. United States*, 377 F.2d 921 (5th Cir.1967), the court held that the receipt of corporate funds pursuant to a stock sale agreement negotiated subsequent to knowledge of the delinquency constitutes willfulness. *Id.* at 924. Under no circumstance does the delegation of the obligation to pay the taxes relieve a responsible person of liability. *Hornsby v. IRS*, 588 F.2d 952, 954 (5th Cir.1979); *Mazo*, 591 F.2d at 1154.

As an officer, director and owner of the corporation, George cannot avoid his obligation to insure that employment taxes are collected and paid over to the government by delegating his duty to Rothbaum. Once he discovered that there was a deficiency, he had an obligation to remedy the situation, but only if the means were in his control.

The government moved for a directed verdict on the issue of willfulness on the grounds that George admitted to not paying the taxes when he learned of the delinquency, and that after knowledge of the nonpayment he preferred other creditors, namely himself, by converting the corporate assets represented by the five accounts to himself. The district court's March 20 order concluded explicitly only that George was a responsible officer of Peninsula, and directed that the suit be dismissed with prejudice. The district court never specifically found George willful. It appears that the district court agreed with the government that George willfully failed to pay the taxes because its amended order issued on April 4, after testimony was heard on the government's counterclaim, states that the court already found "the motion [for directed verdict] should be in all respects granted...."

On appeal, George argues that if he is a responsible person, the question of his willfulness should have been determined by the jury. George contends that he did not learn of the delinquency until after he left his position as a vice-president, director and shareholder of Peninsula, and that he had

no means to pay the taxes when he did receive notice.

The government urges affirmance of the district court's order because it asserts that the willfulness determination does not turn on any disputed facts, and is supported by sufficient evidence. The government contends it is undisputed that George learned of the unpaid taxes in March of 1980, when he still had corporate checks in his possession. The government observes correctly that the taxpayer's continued reliance on another responsible party after notification of the delinquency would provide no excuse. Furthermore, the government, as did the district court, considers George's assumption of the five accounts to be appropriation of valuable corporate assets for his own benefit, which constitutes additional evidence of willfulness.

■ Drawing all favorable inferences in favor of the taxpayer, we believe that a reasonable juror could have found that George met his burden of proving lack of willfulness. Contrary to the government's position, we find there to be a factual dispute concerning whether George learned of the delinquency prior to his departure as a principal of Peninsula. At trial, George testified that he was first notified by the IRS during the summer or early fall of 1980, perhaps in July, which was after he left Peninsula on April 1. Record, Vol. III at 21. At that time, George called Rothbaum, who said that he had worked out a payment schedule. *Id.* George also testified that the "approximately March, 1980" date, which he had given on his refund claim, was not accurate. *Id.* at 46. Rather, the date was "a little later than that. But in '80 sometime, yes." *Id.* Counsel for the government then asked George whether he had signed the refund claim, to which he responded: "Yes. In '80 or about that time is what we have been talking about, March, April portion of 1980." *Id.* at 42. George did specifically recall receiving a second notice from the IRS on August 10, 1981.

The government moved for directed verdict at the close of the taxpayer's case. The government presented no testimony or

evidence regarding when the IRS first notified George of the nonpayment, or when George learned of the deficiency. It is impossible to conclude on the basis of George's testimony alone whether he learned of the nonpayment prior to his departure from Peninsula. Based on a review of the available evidence, we conclude that the issue of George's willfulness was clearly a question for the jury.

We note two serious weaknesses in the government's case which constitute additional support for reversal. First, the assessment against George was made on the basis of three unsigned tax returns, allegedly filed by Peninsula, and two tax returns signed only by Rothbaum. The two tax returns signed by Rothbaum bear the date of April 30, 1980. This evidence strongly supports George's contention that he did not know about the deficiency prior to his departure from Peninsula. George's agreement to leave Peninsula was negotiated in March, 1980 and became effective April 1. Moreover, the IRS agent who testified on behalf of the government on its counterclaim stated that he did not send George a "10 day letter until Sept. 4 '80." Record, Vol. III at 91–92, 99–100.

Second, the government relied heavily on the argument that George "appropriated five accounts of the corporation which could have been used to pay the taxes." *Id.* at 63. The district court agreed with the government that George's action constituted conversion of corporate assets for his own benefit. However, we find no legal support for this argument. In fact, the government conceded at oral argument that it had found no cases to support its use of a misappropriation theory. There is no suggestion that the five accounts George began representing in September, 1980, resulted in George being paid money that was owed to Peninsula. From all that we can determine, George merely received these accounts as independent clients. We cannot conclude that these accounts could be considered as an asset of Peninsula. Thus, a finding of willfulness may not be sustained on the basis of the facts and record before us, which do not indicate that George appropriated any corporate assets.

It is impossible to predict whether a reasonable jury would have resolved the factual dispute against George and found for the government on the issue of willfulness. We reverse the grant of a directed verdict and remand the case for a new trial on this issue.

### B. *Assessments*

■ The commissioner's determination of a tax deficiency is presumed to be correct. *Hornsby*, 588 F.2d at 953. The taxpayer bears the burden of proving otherwise. George claims that he has rebutted the presumption because the government was in possession of the relevant documents, and because the revenue agent investigating the matter did not comply with all of the paperwork procedures. However, as the government observes, this challenge is not directed at the accuracy of the assessment. Despite the obvious carelessness of the government, George has not offered any information which sheds doubt on the accuracy of the assessed amount. Thus, we agree with the district court that George failed to carry his burden of demonstrating that the calculation is deficient. We affirm the district court order on the amount of the government's counterclaim, including interest, in the event the government prevails on the willfulness issue on remand.

### C. *Sufficiency of the Evidence*

We have already found there to be insufficient evidence to support a directed verdict on the issue of George's willfulness. We now review appellant's additional arguments relating to the sufficiency of the evidence. First, George claims that there is insufficient evidence supporting the district court's order of March 20, 1986, that granted the government's motion for a directed verdict, and its amended order of April 4, 1986, because both orders referred erroneously to the second and third, and not the third and fourth, quarters of 1978. This claim is frivolous. There never was any question as to which were the relevant quarters. Moreover, the district court re-

ferred correctly to the third and fourth quarters in the conclusion of its March 20 order.

■ Second, appellant challenges, somewhat ambiguously, the district court's order regarding the priority of his interest in the condominium on the ground that the issue was outside the scope of the district court's briefing request concerning the assessment issue. However, it was George who raised the question of priority. The district court properly found that George's interest is subrogated to the government's because the notice of the federal tax lien was filed prior to the issuance of Rothbaum's quitclaim deed to George.

Finally, appellant challenges the computation of the counterclaim, including the award of interest and costs, as unsupported by the evidence. However, as discussed above, the accuracy of the assessment was not challenged at trial. Furthermore, the award of interest is provided for by I.R.C. § 6601 and 28 U.S.C. § 1961, and costs may be assessed pursuant to Fed.R. Civ.P. 54(d).

## CONCLUSION

The taxpayer was a responsible person within the meaning of § 6672 as a matter of law. A directed verdict on this issue was proper. However, the question of the taxpayer's willfulness requires a factual determination which should have been made by the jury. Accordingly, we reverse on the issue of willfulness and remand this case for proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part and REMANDED.