Ted E. **TSOUPRAKE,** Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

No. 89–0298–Civ.

United States District Court,
S.D. Florida.

Feb. 12, 1992.

Mitchell S. Fuerst, Miami, Fla., for plaintiff.

Jose F. de Leon, Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND
## CONCLUSIONS OF
## LAW

KEHOE, District Judge.

THIS CAUSE came before the Court for a non-jury trial, at which time the Court

considered the argument of counsel and the introduction of testimony and other evidence. Having reviewed the file and being otherwise fully advised in the premises, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. During the second and third quarter of 1984 and the first quarters of 1985, Fire Tech, Inc. (hereinafter the "Corporation" or "Fire Tech") failed to pay to the United States Treasury income and FICA taxes in the amount of $47,633.38 withheld from the salaries of its employees during those quarters.[1]

2. On April 4, 1988, a delegate of the Secretary of the Treasury made an assessment of a penalty in the amount of $47,-633.68, equal to 100% of the unpaid withholding, taxes, against the Plaintiff, Ted E. Tsouprake.

3. The Plaintiff, in disagreement with the assessment, paid $300.00 and filed claims for refund of the amount paid with the Internal Revenue Service (hereinafter the "Service").

4. After his claims for refund had been rejected by the Service, the Plaintiff commenced this action seeking a refund of the amount he paid. The Defendant, United States of America, counterclaimed for the unpaid balance of the assessment, i.e., $47,-333.68, plus interest and statutory additions from the date of the assessment.

5. Fire Tech was a Florida corporation, formed about 1978, engaged in the business of installing fire sprinkler systems. At its inception, the Plaintiff and a Mr. Harry Richard each owned 50% of the stock of the corporation. Around 1981, the Corporation acquired Mr. Richard's stock. From that time, until the dissolution of the Corporation in 1985, the Plaintiff owned 100% of the voting stock of the Corporation.

6. In 1981, the Plaintiff also became the chairman of the board of directors. Mr. Robert Pasternak and Mrs. Wendy Kappitt, Mr. Pasternak's daughter, were also directors and, respectively, president and vice-president. Mr. Pasternak ran the day to day operations of the corporation.

7. The Plaintiff is an attorney admitted to practice in Florida. (He has an undergraduate degree in accounting and taught accounting for five or six years). The Plaintiff had met Mr. Pasternak prior to the formation of the Corporation through a mutual friend.

8. The offices of the Corporation were located in Miami, Florida. The Plaintiff, in addition to being a shareholder and chairman of the board, performed legal services for the Corporation, for which he was paid a salary. He spent between 10 and 20 hours a week at the Corporation's offices, and took work to his own law office. The Plaintiff gave accounting advice to the Corporation's bookkeepers and instructed them to make sure federal employment taxes were paid because "the IRS would close you down."

9. The Plaintiff was instrumental in obtaining all the financing required by the Corporation, personally guaranteeing loans. The Corporation could not obtain financing without his personal guaranties because the credit of Mr. Pasternak and Mrs. Kappitt was not sufficient. All loan documents were signed by the Plaintiff as chairman of the board. He personally guaranteed the purchase of two trucks used by the Corporation, and used personal credit cards to advance funds for the operation of the Corporation.

10. As collateral for the various loans obtained by the Corporation, the Plaintiff used a condominium owned by TSW Corp., a corporation he owned, and a condominium which he had originally purchased in the name of the Corporation and later transferred to himself.[2]

---

1. The amount withheld but not paid during the second quarter of 1984 was $26,185.30, during the third quarter of 1984 was $16,593.17, and during the first quarter of 1985 was $4,855.21.

2. The condominium owned by TSW was used to house out-of-town visitors doing business with the Corporation. The condominium, individually owned by the Plaintiff, was used by Mr. Pasternak as his personal residence.

11. In 1984, the Corporation attempted to expand, in expectation of a change in the law. The Corporation obtained a loan from Capital Bank in May, 1984, in the amount of $350,000.00. Capital Bank agreed to lend the money, using as collateral, the two condominiums owned by the Plaintiff, individually and through TSW. This loan was personally guaranteed by the Plaintiff.[3]

12. The Plaintiff was aware that the Corporation had not fully paid its employment tax liabilities for the first quarter of 1984. He arranged for the Corporation to pay $41,241.67 to the Service.[4]

13. The Corporation opened two bank accounts with Capital Bank, a general account and a payroll account. Originally, Mr. Pasternak and Mrs. Kappitt were the only individuals authorized to sign checks. On September 7, 1984, Mr. Pasternak was dropped as a signatory, and the Plaintiff became authorized to sign checks, together with Mrs. Kappitt.[5] The Plaintiff continued to be authorized to sign checks until the accounts were closed on February 19, 1985.

14. The Plaintiff learned that the corporation was past due in the payment of its withholding taxes to the Service in June of 1984, in July or August 1984, and again in September 1984. He instructed the bookkeepers to make sure that the taxes were timely paid. The Corporation did make several deposits of its tax liabilities for the last quarter of 1984 pursuant to the Plaintiff's instructions.

15. After the Corporation obtained the loan from Capital Bank, its financial condition continued to worsen. In October, 1984, the Plaintiff was informed that Capital Bank would not honor any check payable to him. Because of this, the Plaintiff stopped providing any legal services to the Corporation and resigned as chairman of the board.

16. In February, 1985, when the Corporation's financial condition was hopeless, Capital Bank suggested the dissolution of the Corporation and the formation of another corporation. In order to achieve this purpose, the Plaintiff changed the name of another corporation he had previously formed. This corporation, Astor, continued to perform Fire Tech's contracts and was apparently formed to avoid the payment of Fire Tech's debts. The Plaintiff arranged another loan with Capital Bank, this time for around $150,000.00, which he again collateralized with the two condominiums and personally guaranteed. This loan was used to operate Astor and not to pay any of Fire Tech's debts, including its unpaid tax liabilities. Capital Bank eventually obtained a judgment against the Plaintiff on his personal guaranties for the May 1984 and February 1985 loans.

17. In 1986, Revenue Officer Scarlett Waites (then known as Scarlett Ruffner) was assigned by the Service to the collection of the unpaid tax liabilities of the Corporation. In her attempts to collect the taxes, she determined that the Plaintiff was associated with the Corporation. On September 11, 1986, she interviewed the Plaintiff at his law office and obtained from him a collection information statement for the Corporation. She also interviewed him as a potential responsible person of the Corporation.[6]

18. Prior to her interview with the Plaintiff, Mrs. Waites had learned that he had not filed federal income tax returns for the years 1984 and 1985. When questioned by Mrs. Waites, the Plaintiff stated that he had not filed these returns because he wanted to say he had not filed them in case he was deposed in pending litigation

---

**3.** The Corporation had attempted unsuccessfully to borrow money from other banks.

**4.** At the trial, Plaintiff testified that these taxes were paid with the loan proceeds. However, it appears that the loan proceeds were not disbursed until after May 25, 1984, and the check to the Service was cashed on May 18, 1984.

**5.** Checks issued on the payroll account required only one signature, while checks issued on the general account required two signatures if over $5,000.01 and one signature if under $5,000.00.

**6.** At no time did the Plaintiff claim an attorney-client privilege when answering Mrs. Waites's questions.

against him with respect to the Corporation.

19. Mrs. Waites issued an administrative summons to the Plaintiff to produce the returns, which the Plaintiff later filed with Mrs. Waites.[7]

20. The Plaintiff was a person required to collect, truthfully account for, and pay over the taxes withheld from the employees of the Corporation during the second and third quarters of 1984 and the first quarter of 1985. However, the Plaintiff willfully failed to collect, truthfully account for, and pay over these taxes.

21. Any of the foregoing Findings of Fact that are Conclusions of Law shall constitute Conclusions of Law.

## CONCLUSIONS OF LAW

1. This is a civil action arising as a result of the imposition of a penalty pursuant to Section 6672 of the Internal Revenue Code (Title 26, United States Code) in the amount of $47,633.68 against the Plaintiff. The Court has jurisdiction over the Plaintiff's claim pursuant to Title 28, United States Code, Section 1346(c).

2. Section 6672 of the Internal Revenue Code imposes a penalty equal to 100% of the income and FICA taxes withheld from the employees of a corporation but not paid over to the United States Treasury, on a person required to collect, truthfully account for, or pay over the withheld taxes who willfully failed to do so. *See Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).[8]

3. The assessment of the 100% penalty is presumed to be correct, with the burden of proof on the Plaintiff to prove by a preponderance of the evidence that he is not liable under the statute. This encompasses not only the burden of producing evidence, but also the burden of persuasion, both with respect to the Plaintiff's claim and the Defendant's counterclaim. *See Liddon v. United States,* 448 F.2d 509, 513–14 (5th Cir.1971), and *Mersel v. United States,* 420 F.2d 517, 518 (5th Cir.1970).

4. To avoid liability, the Plaintiff must prove either that he was not a person required to collect, truthfully account for, or pay over the withheld taxes (the "responsibility" factor) or that he did not willfully fail to do the required act (the "willfulness" factor). *See Liddon v. United States,* supra, at 513–14.

5. "[R]esponsibility is a matter of status, duty, and authority, not knowledge." *Mazo v. United States,* 591 F.2d 1151, 1156 (5th Cir.1979). This circuit has embraced a "broad and functional test" to determine who is a "responsible person" under Section 6672. *Merchants National Bank of Mobile v. United States,* 878 F.2d 1382, 1386 (11th Cir.1989).[9]

6. The Plaintiff was a person required to collect, truthfully account for, and pay over the withheld taxes. At all relevant times, the Plaintiff owned 100% of the voting stock of the corporation, was chairman of the board until at least October 1984, was authorized to sign checks for the corporation from September 7, 1984, until the dissolution of the corporation in February, 1985, was authorized to borrow

---

7. The Plaintiff's tax return for 1984 shows that he received $3,159.58 as interest income from the Corporation in that year (the same year the Corporation was experiencing financial difficulties and was not paying its tax liabilities). His return for the year 1985 shows a capital loss deduction with respect to his ownership of the Corporation, $20,000.00 he had invested and $7,000.00 he had charged on his personal credit cards for the Corporation. In subsequent years, he continued to claim capital loss deductions.

8. Because the employees of a corporation are credited with the payment of the taxes as they are withheld from their salaries, the United States Treasury incurs a deficit unless the with-

held taxes can be collected from the employer. The 100% penalty is a device enacted by Congress to insure collection of the withheld taxes from the persons responsible for the failure of the employer to pay over the withheld taxes to the United States. *United States v. Huckabee Auto Co.,* 783 F.2d 1546, 1548 (11th Cir.1986).

9. "Indicia of responsibility includes the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *Thibodeau v. United States,* 828 F.2d 1499, 1503 (11th Cir.1987).

money for the corporation at all relevant times, and was instrumental in obtaining all the financing needed by the corporation.[10]

7. By virtue of his 100% ownership of the voting stock of the corporation, the Plaintiff possessed broad statutory duties under Florida law to control the corporation's affairs.[11]

■ 8. Although Mr. Pasternak ran the day to day operations of the corporation and agreed to the assessment against him, the Plaintiff was not relieved of responsibility. More than one person may be a "responsible person" of a corporation. *See Roth v. United States*, 779 F.2d 1567, 1571 (11th Cir.1986); and *see Howard v. United States*, 711 F.2d 729, 737 (5th Cir.1983), for the proposition that "... section 6672(a) looks only to 'responsible persons,' not to the 'most responsible person,' for satisfaction." Thus, while Mr. Pasternak ran the day to day operations of the corporation, the Plaintiff had the power to control the financial affairs of the corporation through his exclusive ability to finance its operations.

■ 9. The Plaintiff argues that Capital Bank was responsible for the nonpayment of the withheld taxes. The jurisdiction of this Court is controlled by the Plaintiff's claims for refund filed with the Service. *See Sanders v. United States*, 740 F.2d 886, 89–90 (11th Cir.1984). Section 7422(a) of the Internal Revenue Code requires that a claim for refund be filed before a suit is filed. The claim for refund must set forth in detail each ground upon which the refund is claimed. Treasury Regulation § 301.6402–2(b)(1). The Plaintiff's allegations with respect to Capital Bank were not brought to the attention of the Service in his claims for refund. The Court, accordingly, lacks jurisdiction to order a refund based on this new ground.[12]

10. The Plaintiff was a "responsible person" of the corporation for the three quarters at issue.[13]

■ 11. Pursuant to the Findings of Fact set forth hereinabove, the Court concludes that the Plaintiff willfully failed to collect, truthfully account for, and pay over the withheld taxes.[14]

■ 12. Although the Plaintiff learned, on more than one occasion after June 1984, that the corporation was not remaining current with its tax liabilities, and although he always instructed the bookkeepers to keep current, nevertheless,

---

**10.** He also made arrangements to pay an earlier tax delinquency of the corporation and made sure that some tax deposits were made.

**11.** Under the Florida General Corporation Act, Chapter 607, Florida Statutes (1989), the Plaintiff had broad statutory rights in connection with the articles of incorporation, by-laws and board of directors, as well as the power to dissolve the corporation or to request the courts to liquidate the corporate assets.

**12.** In connection with the Defendant's counterclaim for the unpaid balance of the assessment, the Plaintiff has failed to prove that Capital Bank exercised any control over the affairs of the corporation. Moreover, even if Capital Bank controlled the affairs of the corporation, this would not relieve the Plaintiff of his liability under Section 6672. *See* the similar argument made in *Kalb v. United States*, 505 F.2d 506, 510 (2nd Cir.1974); and *see Commonwealth National Bank of Dallas v. United States*, 665 F.2d 743 (5th Cir.1982).

**13.** Although the Plaintiff resigned as chairman of the board and stopped providing legal servic-es to the corporation in October 1984, he continued as the sole shareholder of the corporation and as the authorized official to sign corporate checks until its dissolution in February 1985. In February 1985, he allowed all of the corporation's contracts to be transferred to another corporation he had previously formed and was instrumental in obtaining a new loan from Capital Bank for the performance of the contracts.

**14.** Willfulness has been defined as "... a voluntary, conscious, and intentional act, such as payment of other creditors in preference to the United States ... [concerning which] bad motive or evil intent need not be shown.... The willfulness requirement is satisfied if the responsible person acts with a reckless disregard or a known or obvious risk that trust funds may not be remitted to the Government ... such as by failing to investigate or correct mismanagement after being notified that withholding taxes have not been duly remitted." *Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir.1979), and the cases cited therein. *See also Thibodeau v. United States*, 828 F.2d 1499, 1505 (11th Cir. 1987), and *United States v. Leuschner*, 336 F.2d 246 (9th Cir.1964).

he allowed other liabilities of the corporation to be paid. Once he became aware of the tax liabilities, he was under a duty to ensure that the taxes were paid before any payments were made to other creditors. His failure to do this is sufficient to show willfulness. *See Mazo v. United States,* 591 F.2d 1151, 1157 (5th Cir.1979); and *cf Wright v. United States,* 809 F.2d 425 (7th Cir.1987), concerning willfulness through a reckless disregard in paying taxes.

13. The Plaintiff has failed to carry his burden of proving that he was not a responsible person and that he did not willfully fail to collect, truthfully account for, or pay over the taxes withheld from the employees of Fire Tech during the three quarters at issue. The Court rejects Plaintiff's arguments that, with respect to the corporation, he was merely an impotent entity.

14. Concerning the additional penalties assessed by the Service for the unpaid withholding taxes of the corporation against Mr. Pasternak and Mrs. Kappitt, the Plaintiff seeks an abatement of his liability to the extent of the payments made by Mrs. Kappitt. Liability under Section 6672 of the Internal Revenue Code is joint and several. Section 6672 is silent with respect to whether the Service can collect multiple penalties from various parties. It is the policy of the Service, however, to seek only one full satisfaction of the unpaid withholding taxes. Although Mrs. Kappitt appears to have made some payments with respect to her assessment, the issue of the amounts of those payments and the Service's retention rights of those payments has not been proven. The Service does, however, have the right to allocate the payments made by Mrs. Kappitt in whatever way is most advantageous to the collection of the revenues. In this connection, the Court specifically notes, and relies upon, the specific assurance of the Service that it will give the Plaintiff all appropriate credits with respect to his liability under Section 6672. Therefore, it is not necessary for the Court to abate any portion of the penalty assessed against the Plaintiff under these circumstances.

15. Any of the foregoing Conclusions of Law that are Findings of Fact shall constitute Findings of Fact.

### RULINGS OF THE COURT

1. Judgment SHALL BE entered in favor of the Defendant, denying the refund requested by the Plaintiff, upon a determination that the Plaintiff is indebted to the Defendant in the amount of $47,633.68, plus interest and statutory additions thereon, pursuant to law, from the date of the assessment, until paid.

2. A Final Judgment SHALL BE entered this date reflecting the rulings of the Court pursuant to these Findings of Fact and Conclusions of Law.

3. The Court SHALL RETAIN jurisdiction in this cause to entertain post-judgment motions, which shall be filed within ten (10) days from the date of the Final Judgment herein.

DONE AND ORDERED.