In re Ellen L. MARINO, Debtor.

United States of America, Appellant,

v.

Ellen L. Marino, Appellee.

No.  6:04–CV–427–Orl–31KRS.

United States District Court,
M.D. Florida,
Orlando Division.

May 12, 2004.

Raymond John Rotella, Kosto & Rotella, P.A., Orlando, FL, for Debtor.

Hemant Sharma, Attorney General, U.S. Department of Justice, Washington, DC, for Appellant.

## ORDER

PRESNELL, District Judge.

This cause comes for the Court's consideration on the Appeal of the United States (Doc. 7), and Appellee's Answer Brief (Doc. 9).

## I. Background [1]

In its Order of February 12, 2004, the Bankruptcy Court found the following facts, which the parties do not dispute.

In 1995, Daniel Myers asked James Kunkle, son of Debtor Ellen Marino,[2] to incorporate SUSA/U.S. Financial, Inc. ("SUSA"), a licensed correspondence mortgage lender. Myers could not serve as an officer of the corporation due to past credit problems. In late 1996 or early 1997, Myers asked Marino to become president, sole shareholder, and mortgage lender license holder for SUSA. Marino agreed and remained president and sole shareholder of the corporation until it ceased operating in 2001. As president, Myers received a salary in 1999 and 2000. In addition, over the course of her presidency, Marino— again at the request of Myers—opened and closed corporate bank accounts, and signed corporate checks. Marino also approved the making and usage of a signature stamp, which Myers used as he desired. Despite her position, Marino had little contact with the business or its employees and took no active role in the

corporation's daily operations. In fact, Myers ran the day-to-day affairs of the corporation from its inception until it ceased operations.

In 1999, SUSA sought to expand its business and as a result suffered financially. Pursuant to Myers' request, Marino thus made a capital contribution of $46,000, and helped to obtain a line of credit for SUSA of $50,000 from Huntington National Bank.

Later that year, IRS letters began to arrive at Marino's house. Marino therefore learned that SUSA had some tax problems but she relied on Myers' representation that he and the company accountant would handle them.

In early 2000, IRS officer Dee Lawson[3] came to Marino's house to serve Marino a summons because SUSA had failed to provide requisite information to the IRS. By this time, the IRS had levied SUSA's accounts. On May 24, 2000, Marino, on behalf of SUSA, signed an installment agreement with the IRS to pay the trust fund taxes. The installment agreement provided that SUSA would make monthly payments of increasing amounts to the United States. SUSA defaulted on the installment agreement.

On April 6, 2001, SUSA filed for bankruptcy, and three days later, Marino filed for personal bankruptcy. On August 12, 2002, Marino instituted an adversary proceeding by filing a Complaint to Determine Dischargeability of IRS Debt with regard to trust fund taxes owed for SUSA. (Bankr.Doc. 1). The Bankruptcy Court held a bench trial on the issue of whether

---

**1.** The Court discerned the facts from the Bankruptcy Court record. The Court will reiterate only those facts relevant to the instant appeal.

**2.** Marino is Myers' "significant other." (Tr., Bankr.Doc. 22 at 77).

**3.** This name is a pseudonym used by the IRS officer.

Marino was liable to pay the taxes pursuant to 26 U.S.C. § 6672, which provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by the law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over . . .

26 U.S.C. § 6672. On February 12, 2004, the Bankruptcy Court issued its findings of fact and conclusions of law and held that Marino was not a "responsible" person who "willfully" failed to pay over withheld taxes in trust to the United States within the meaning of the statute. Specifically, the Bankruptcy Court concluded that:

Debtor lacked any authority or power of the management of SUSA. Debtor's position as president was in title only. Debtor did not have control over the financial affairs, disbursement of corporate funds or the ability to hire or fire employees. Myers had complete decision-making authority over SUSA. Debtor was never the "responsible person" pursuant to 26 U.S.C. § 6672(a).

(Bankr.Doc. 23 at 5). The Bankruptcy Court also found that:

Debtor's failure to remit taxes, following Agent Lawson's meeting with her at her home in early 2000, was willful. Since Debtor was not the responsible person her willful failure to remit taxes precludes personal liability pursuant to 26 U.S.C. § 6672.

(*Id.* at 6).

The United States timely filed the instant appeal, which pertains only to taxes withheld during the first, second, and fourth quarters of 1999, and the first quarter of 2000.

## II. Standard of Review

■ This Court conducts a *de novo* review of all legal issues on appeal from the Bankruptcy Court, and reviews findings of fact for clear error. *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1337 (11th Cir.2000); *In re Thomas*, 883 F.2d 991, 994 (11th Cir.1989) (citing Bankruptcy Rule 8013, which instructs that on appeal, the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or may remand with instructions for further proceedings; that findings of fact shall not be set aside unless clearly erroneous; and that due regard shall be given to the bankruptcy court's judgment of the witnesses' credibility).

## III. Analysis

### A. Responsible Person

■ The United States argues that the Bankruptcy Court erred as a matter of law in finding that Marino was not a "responsible" person within the meaning of 26 U.S.C. § 6672. For the reasons stated below, this Court agrees.

■ A "responsible" person is a corporate officer or employee who has a duty to collect, account for, or pay over the withheld tax. *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir.1987) (*per curiam*) (citing *Mazo v. United States*, 591 F.2d 1151 (5th Cir.1979)).[4] Responsibility is a matter of status, duty, and authority, rather than knowledge. *Id.* To determine if a party is responsible, a court may look to several indicia, including:

---

**4.** All decisions of the Fifth Circuit prior to October 1, 1981, are binding precedent on this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

holding corporate office, control over financial affairs, authority to disburse corporate funds, ownership of stock, and ability to hire and fire employees. *Id.*

An analysis of binding case law reveals that the Bankruptcy Court erred by giving too much weight to the undisputed fact that Marino did not actually exercise control over the daily operations and decisions of the corporation. In *Williams v. United States,* 931 F.2d 805 (11th Cir.1991), for example, the court found that, as a matter of law, House Williams was a "responsible" person based upon the following indicia: he was president and chief operating officer; he signed corporate checks; he owned 50 percent of the stock and later 100 percent of the stock; and he had control over all of the daily operations of the corporation. *Id.* at 810. Similarly, in the instant case, Marino was president, signed corporate checks, and owned 100 percent of the company stock. Although the record clearly establishes that Marino did not involve herself in the day-to-day operations of the corporation, by virtue of her position as president, sole shareholder, and sole officer with authority to sign corporate checks, she *could* have taken an active role in the company.[5] *Neckles v. United States,* 579 F.2d 938, 940 (5th Cir.1978) *(per curiam)* (noting as significant evidence that "Neckles was the one who *could have* seen to it that the withheld taxes were paid over ...")[6] (emphasis added). In the eyes of the law, this authority and status is enough to render Marino responsible under § 6672. *See Thosteson v. United States,* 331 F.3d 1294,

1299 (11th Cir.2003) ("responsibility is a matter of power and authority to make payment of withholding taxes, which is not dispositively determined by corporate title or position.") (citation omitted); *Mazo,* 591 F.2d at 1156 (authority of corporate officers to see that trust funds were remitted rendered them "responsible" under the statute).

The fact that Marino did not actually exercise her control over corporate decisions does not absolve her of liability. In fact, binding cases suggest that Marino could in fact be deemed responsible based solely upon her status as the only one who could and did sign corporate checks.[7] *See Mazo,* 591 F.2d at 1156 (citing *Liddon v. United States,* 448 F.2d 509 (5th Cir.1971), in which the old Fifth Circuit held that "evidence that a director was the only person at the company's home office who was permitted to sign checks supported a finding that he was a responsible person, even though the right-hand man did most of the check signing and supervised the clerical operations of the company."); *Hornsby v. IRS,* 588 F.2d 952, 954 (5th Cir.1979) *(per curiam)* (upholding district court's finding that plaintiff was responsible, for he was the only person authorized to sign corporate checks at the relevant times).

It is also of no moment that Marino was president in name only and essentially served at the whim of Myers; Marino cannot avoid liability based on the "Nuremberg defense" that she was just follow-

---

5. Moreover, contrary to Marino's legal brief (*see* Doc. 9 at 9), there is no requirement that *all* of the "indicia of responsibility" must be satisfied in order for a court to find the individual responsible.

6. *Neckles* presents a situation different from Marino's. In *Neckles,* the court was asked to determine if a man who was not an officer or

employee was still responsible under the law due to his significant control over the corporation and involvement in its daily affairs. 579 F.2d 938.

7. Myers' use of a signature stamp does not alter this analysis, for Marino approved the usage.

ing orders. *See, e.g., Hornsby,* 588 F.2d at 953 (citing cases for the established proposition that a taxpayer cannot avoid responsibility by disregarding his duty and leaving it for someone else to discharge); *Moore v. United States,* 465 F.2d 514, 517–18 (5th Cir.1972) (determining that plaintiff Moore was a responsible person even though the business partner made all decisions as to which bills to pay, and Moore was "merely follow[ing] orders and instructions from [his business partner] in signing his name to corporate checks."); *Brown v. United States,* 464 F.2d 590, 591 n. 1 (5th Cir.1972) (noting that, to be deemed "responsible," the law does not require a corporate officer to have the final word with regard to what checks are to be paid to whom). As in *Roth v. United States,* 779 F.2d 1567 (11th Cir.1986), Marino was under no obligation to follow Myers' instructions. *Id.* at 1571. Because Marino had the authority to pay the taxes and at least the *ability* to control corporate finances, she had the "effective power" to pay. *Brown,* 464 F.2d at 591 (finding sufficient evidence for the jury to have inferred that plaintiff had "effective power and corresponding duty to insure that the corporate obligation to the Government would be fulfilled[ ]" because Brown co-signed all corporate checks, actively participated in efforts to secure financing, and made the decision to terminate corporate operations).[8]

■ The Bankruptcy Court also erred as a matter of law by finding that Marino was not "*the* responsible person." (Bankr. Doc. 23 at 5). The case law is clear that more than one person may be responsible

under § 6672. In *Tsouprake v. United States,* 797 F.Supp. 962 (S.D.Fla.1992), for example, the court held that the plaintiff was a responsible person because he: owned 100 percent of the corporation's voting stock;[9] acted as chairman of the board of directors; had authority to sign corporate checks and to borrow money for the corporation; and played a large role in obtaining financing for the corporation. *Id.* at 966–67. Significantly, the *Tsouprake* court added:

> Although [another corporate director] ran the day to day operations of the corporation and agreed to the assessment against him, the Plaintiff was not relieved of responsibility. More than one person may be a "responsible person" of a corporation.... the Plaintiff had the power to control the financial affairs of the corporation through his exclusive ability to finance its operations.

*Id.* at 967. *See also Thosteson,* 331 F.3d 1294 (holding that the responsibility of another did not absolve the plaintiff of his own responsibility where the plaintiff helped incorporate the company, served as vice president and president, owned varying levels of stock, and possessed authority to hire and fire); *George v. United States,* 819 F.2d 1008, 1011 (11th Cir.1987) (concluding that another's role in "managing most of the corporation's financial affairs" did not relieve the plaintiff of his duty as an officer, director, and shareholder to insure payment of taxes). In the instant case, the Bankruptcy Court erred by implying, with its use of the word "the," that

---

8. The *Brown* court theorized that a contrary holding—i.e., that a lack of individual authority to sign a corporate check prevents a finding of responsibility—would lead to protective co-signing arrangements that would essentially eviscerate § 6672. 464 F.2d at 591.

9. This fact proved especially significant to the court because, as a result of the plaintiff's 100 percent ownership of voting stock, the plaintiff "possessed broad statutory duties under Florida law to control the corporation's affairs." 797 F.Supp. at 967.

there could be only one responsible person under § 6672.

## B. Willfulness

Because the Court found that the Bankruptcy Court erred as a matter of law and has determined that Marino was in fact a "responsible" person within the statutory definition, the Court must now determine whether the Bankruptcy Court also erred in its findings and conclusions regarding willfulness.

■■■ Once responsibility is established, the individual bears the burden of proving lack of willfulness falls on the taxpayer. *Thibodeau,* 828 F.2d at 1505 (citing *Mazo* ). Willfulness is satisfied when a responsible person either has knowledge of payments to other creditors after she learns of the failure to remit withheld taxes, or when the responsible person acted with reckless disregard of a known or obvious risk that trust funds may not be remitted to the government. *Thosteson,* 331 F.3d at 1300 (citations omitted); *see also George,* 819 F.2d at 1011–12. Willfulness does not require a showing of fraud or bad motive. *Thibodeau,* 828 F.2d at 1505.

■■■ The United States contends that the Bankruptcy Court erred in finding that Marino's failure to pay was not willful until after early 2000, when Lawson met with Marino at her home. The United States argues that Marino's conduct was willful during the first two quarters of 1999 because she acted with reckless disregard, and that her conduct was willful during the last quarter of 1999 and the first quarter of 2000 because she had actual knowledge that payments were being made to other creditors before the Government. Again, the reasons stated below, the Court agrees.

### 1. First two quarters of 1999

From 1997 until 2001, Marino was president and sole shareholder of SUSA. She received a salary in 1999 (and 2000) and signed checks on behalf of the corporation. Although she allowed Myers to manage all aspects of the business, she knew about that the company was having cash flow problems (*see, e.g.,* Doc. 22 at 128–132–33) and indeed provided a capital contribution of more than $40,000 and obtained a $50,000 loan for the company in that year. These facts demonstrate that Marino acted in reckless disregard of an obvious risk that trust funds may not be remitted to the Government. As above, Marino cannot avoid her obligation to insure payment to the United States by pleading ignorance and allowing Myers to handle all corporate affairs. As *George* said:

> As an officer, director and owner of the corporation, George cannot avoid his obligation to insure that employment taxes are collected and paid over to the government by delegating his duty to [someone else]. Once he discovered that there was a deficiency, he had an obligation to remedy the situation, but only if the means were in his control.

819 F.2d at 1012. *See also Thosteson,* 331 F.3d at 1300 (rejecting plaintiff's use of the "Nuremberg defense," i.e., that he was just following orders). Clearly, although Marino elected not to involve herself in the corporation's financial or other matters, she had the means to do so. Marino has not disproven willfulness with regard to the first two quarters of 1999.

### 2. Last quarter of 1999 and first quarter of 2000

The Court further finds that Marino had actual knowledge of the delinquent taxes as of "late 1999." (Bankr.Def.'s Ex. 3: [10]

---

**10.** Defendant's Exhibit 3 in the Bankruptcy Record is an interview report signed by Marino.

118

answering "Letter at house late 1999" to the question, "When and how did you first become aware of the delinquent taxes?"). For this reason, Marino has not disproven her willful failure to pay taxes for the last quarter of 1999 and the first quarter of 2000.

## IV. Conclusion

For all the foregoing reasons, the Court therefore finds that the Bankruptcy Court erred as a matter of law. The Bankruptcy Court's Order of February 12, 2004, is thus **REVERSED.** The case is remanded to the Bankruptcy Court for entry of judgment in accordance with this Order.