Elliott T. WILLIAMS, Plaintiff,

v.

UNITED STATES of America, Defen-
dant–Counterclaim and Third–Party
Plaintiff, Appellant,

v.

Larry HOUSE, Third–Party
Defendant Appellee.

No. 90–7157.

United States Court of Appeals,
Eleventh Circuit.

May 17, 1991.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., Gary R. Allen, Chief, David M. Moore, Richard Farber, Brian C. Griffin, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendant-counterclaim and third-party plaintiff-appellant.

Stephen L. Poer, Haskell, Slaughter & Young, Birmingham, Ala., for third-party defendant-appellee.

Before CLARK and BIRCH, Circuit Judges, and COFFIN [*], Senior Circuit Judge.

BIRCH, Circuit Judge:

The United States District Court for the Northern District of Alabama ("the District Court") entered judgment in favor of Larry House ("House") in accordance with jury verdicts finding House not liable under 26 U.S.C. § 6672 ("section 6672") for willful failure to collect and pay over federal employment taxes withheld from the wages of employees of American Intermedical Resources, Inc. ("AIR"). The United States subsequently filed a motion in the District Court for judgment notwithstanding the verdict or, in the alternative, a new trial. The United States appeals from the District Court's order denying that motion. We REVERSE the denial of the United States' motion for judgment notwithstanding the verdict, finding as a matter of law that House was a responsible person who will-

[*] Honorable Frank M. Coffin, Senior U.S. Circuit Judge for the First Circuit, sitting by designa- tion.

fully failed to pay over federal employment taxes.

## I. BACKGROUND

### A. *Factual Background*

House and Elliott Williams ("Williams") each owned fifty percent of the stock of AIR, a corporation providing respiratory and cardiology services to hospitals and clinics. As the president and chief operating officer of AIR, House supervised its daily operations. Williams, secretary-treasurer and chairman of the board of directors of AIR, arranged the company's financing.

In 1981, Williams established, on behalf of AIR, a banking relationship with the Central Bank of the South ("the Bank"). AIR opened three accounts at the Bank: a general depository account, a payroll account, and a general operating account. AIR also obtained financing from the Bank in the form of a $500,000 term loan and a $650,000 revolving line of credit. Both the term loan and the revolving line of credit were secured by AIR's assets and accounts receivable. The term loan was guaranteed personally by Williams and House.

In February, 1982, the Bank requested that Williams personally endorse the remainder of the debt owed by AIR to the Bank. After Williams refused, the Bank, as a secured creditor, implemented a "daily accounting procedure," whereby AIR reported and delivered to the Bank all of its receipts on a daily basis. The Bank then made decisions as to the disbursement of AIR's receipts, most of which the Bank used to reduce the amount of AIR's indebtedness to the Bank. Although payments to AIR's other creditors fell behind, the Bank did allow employee payroll and withholding tax payments to be made, even if these payments created overdrafts in AIR's accounts. The Bank terminated the daily accounting procedure in April, 1982. From April, 1982, until September, 1983, AIR continued to make payments to the Bank, meet its ongoing operation expenses, compensate its employees, and make withholding tax payments.

In September, 1983, the Bank again requested that Williams personally guarantee the remainder of the debt AIR owed the Bank. After Williams refused, the Bank demanded reduction of AIR's loan balances; refused to extend further credit on AIR's revolving line of credit; and, without giving notice to AIR, ceased covering any of AIR's overdrafts [1]. A daily accounting procedure was placed into effect. Monies received by AIR were presented to Gene Boles ("Boles"), a vice-president loan administrator of the Bank, who deposited the amounts received into AIR's general depository account. Boles then determined which of AIR's creditors would be paid, and transferred AIR's money among its different accounts accordingly. On more than one occasion, checks written by AIR were returned for insufficient funds because the Bank had "swept" [2] AIR's general depository account.

The federal employment taxes withheld from the wages of AIR employees in the third quarter of 1983 were due to be paid in October, 1983. Accordingly, AIR submitted these tax payments directly to the Bank for deposit in an Internal Revenue Service ("IRS") account [3]. However, on several occasions the Bank would not accept these withholding tax payments because AIR's account did not contain sufficient funds. When this occurred, House informed Boles and Tony Cashio ("Cashio"), a commercial loan officer at the Bank, that because they had chosen to ex-

---

**1.** Until this time, when AIR's account contained insufficient funds to pay a check, the Bank would allow the check to clear and advance the amount of the overdraft to AIR from AIR's revolving line of credit.

**2.** In other words, the Bank had applied all of the money in AIR's depository account to pay down AIR's debt to the Bank. Thus, although sufficient funds were present in AIR's account

to cover checks when written, the checks were not honored when presented for payment because the Bank had "swept" AIR's account.

**3.** Such payments to the Bank on behalf of the IRS were called "TT & L" (treasury, tax and loan) deposits. The Bank would debit the account of the company making the payment and credit a government account.

tend credit to AIR for the amount of the payroll checks, they also must extend credit for the withholding tax payments. When the Bank remained reluctant to accept the withholding tax payments, House mailed payments directly to the IRS. However, because the Bank continued to sweep AIR's account, several checks made payable to the IRS were returned for insufficient funds. When House learned that AIR's withholding tax payments were past due, he again spoke to Cashio and Boles about their failure to make funds available for withholding tax payments.

The Bank demanded full payment of AIR's outstanding loans on January 26, 1984. Because AIR was unable to meet this demand, the Bank placed AIR into "liquidation mode." The Bank contacted AIR's account debtors, instructing them to remit their payments directly to the Bank. The Bank deposited the amounts received in AIR's general depository account, swept the account, and applied most of the money to pay down AIR's loans from the Bank. The Bank also allowed payments to AIR's employees and to those of AIR's creditors whose continued services were necessary for AIR to remain in business. During this time, House met with Boles on several occasions, attempting to make withholding tax payments on behalf of AIR. Boles would not accept the tax deposit checks, claiming that after the Bank swept AIR's account there was money sufficient to satisfy only AIR's payroll expenses, not the outstanding withholding taxes.

On February 23, 1984, AIR's indebtedness to the Bank was discharged. Accordingly, the Bank released control over AIR's accounts receivable, inventory and other assets. AIR's relationship with the Bank terminated, and House opened a new depository account on behalf of AIR with another bank. Soon thereafter, in March of 1984, Williams resigned from AIR, assigning his stock in AIR to House.

House was in control of AIR from March, 1984 until November, 1984, when

AIR ceased to conduct business. During this time, House made payments to the IRS in an attempt to reduce the amount of AIR's past due withholding taxes,[4] and paid to the IRS the taxes withheld during this period from the wages of AIR's remaining employees. However, a check for the taxes withheld from the last AIR payroll was not sent to the IRS. On November 27, 1984, AIR's sole bank account was garnished by one of AIR's creditors. This garnishment depleted the funds available to AIR, and precluded the payment of the taxes withheld from the employees' wages.

In May, 1985, House, on behalf of AIR, entered into an installment agreement with the IRS to pay off AIR's outstanding withholding taxes. House made several payments under this plan. The IRS later assessed against House a 100% penalty for the withholding taxes due for the first quarter of 1983, the first quarter of 1984 and the third quarter of 1984. In response, House dispatched a handwritten letter to the IRS on November 27, 1985. In that letter, House explained that for the third quarter of 1983 and the first quarter of 1984, Williams and the Bank were in control of AIR's finances and would not allow House access to any of AIR's assets. The letter further described House's attempts to pay the employment taxes withheld from the wages of AIR's employees.

## B. *Procedural Background*

On December 18, 1987, Williams filed a complaint in the District Court against the United States, seeking a refund of a $1000 payment he had made in partial satisfaction of a penalty assessed against him pursuant to section 6672 for the past due employment taxes withheld from the wages of AIR's employees for the third quarter of 1983 and the first quarter of 1984. The United States responded to Williams' claim on February 29, 1988, and filed a counterclaim against him for the remainder of the assessment. The counterclaim joined House as an additional defendant and

---

4. The IRS, however, applied these payments to late penalties AIR had incurred by not paying its withholding taxes in a timely fashion.

sought the balance of the penalty assessed against House for the unpaid taxes withheld during the third quarter of 1983 and the first and third quarters of 1984.

Prior to trial, the United States and Williams reached a settlement as to the issue of Williams' liability. The case against House, however, was not dismissed, and the issues surrounding House's section 6672 liability for the third quarter of 1983 and the first and third quarters of 1984 were presented to a jury. After the District Court denied the United States' motion for a directed verdict, the jury returned its verdicts. The jury found that House was responsible for collecting, accounting for and paying over the taxes withheld from the wages of the employees of AIR during the third quarter of 1983 and the third quarter of 1984, but concluded that House's failure to do so was not willful. The jury determined that House was not responsible for collecting, accounting for and paying over the taxes withheld from the wages of AIR's employees during the first quarter of 1984. In accordance with these verdicts, the District Court entered judgment in favor of House on November 13, 1989.

On November 24, 1989, the United States filed a post-trial motion in the District Court. The United States contended that the entry of a judgment notwithstanding the verdict was appropriate because reasonable jurors could conclude only that House was a responsible person during the quarters at issue and that his failure to pay over the federal withholding taxes was willful. Alternatively, the United States argued that a new trial was required because the District Court had instructed the jury that the United States had the burden of proof concerning the issue of House's responsibility. The United States claimed that this instruction was erroneous and, therefore, warranted a new trial.

The United States' motion for judgment notwithstanding the verdict or, in the alternative, a new trial was denied. The District Court concluded that reasonable jurors could have found that House was not responsible for the payment of taxes withheld during the first quarter of 1984 and that although he was responsible during the third quarters of 1983 and 1984, his failure to pay these withholding taxes was not willful. The District Court also held that the burden of proof concerning House's responsibility properly was placed on the United States and, even if this instruction were erroneous, any resulting error was harmless.

The United States' appeal presents two issues to this court: 1) whether the District Court erred in denying the United States' motions for a directed verdict and for a judgment notwithstanding the verdict; and 2) whether the District Court erroneously instructed the jury on the United States' burden of proof, thereby entitling the United States to a new trial. Because we find that the United States was entitled to a directed verdict, we do not discuss the second issue.[5]

## II. DISCUSSION

■■■ In reviewing a district court's denial of a motion for judgment notwithstanding the verdict, we consider all of the evidence in the light most favorable to the party opposed to the motion. *Smith v. United States*, 894 F.2d 1549, 1552 (11th Cir.1990); *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir.1987). A motion for a directed verdict should be granted only if, viewing the evidence as a whole and drawing all reasonable inferences in favor of the nonmoving party, no reasonable juror could reach a contrary verdict. *Smith*, 894 F.2d at 1552; *Thibodeau*, 828 F.2d at 1503. Section 6672[6] imposes liabili-

---

5. As a result of the settlement between Williams and the United States, the United States has obtained payment of AIR's outstanding withholding taxes for the third quarter of 1983. Accordingly, the only quarters at issue on appeal are the first and third quarters of 1984.

6. Section 6672 provides:

(a) General Rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title [Title 26 of the United States Code] who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the

ty upon (1) a responsible person (2) who has willfully failed to perform a duty to collect, account for, or pay over federal employment taxes. *Thibodeau*, 828 F.2d at 1503; *George v. United States*, 819 F.2d 1008, 1011 (11th Cir.1987). Thus, we will consider the evidence in the light most favorable to House, and will reverse the District Court only if reasonable jurors would have been compelled to find that House met these requirements. *George*, 819 F.2d at 1011.

 Generally, the courts have interpreted rather broadly who will constitute a "responsible person" under section 6672. *Smith*, 894 F.2d at 1553 (citing *Slodov v. United States*, 436 U.S. 238, 246–50, 98 S.Ct. 1778, 1784–87, 56 L.Ed.2d 251 (1978) and *Liddon v. United States*, 448 F.2d 509, 512 (5th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972)). A person is responsible within the meaning of section 6672 if he has a duty to collect, account for or pay over taxes withheld from the wages of a company's employees.[7] *Thibodeau*, 828 F.2d at 1503; *George*, 819 F.2d at 1011. Responsibility is "a matter of status, duty and authority." *Mazo v. United States*, 591 F.2d 1151, 1156 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).[8] "Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *George*, 819 F.2d at 1011. House possessed many characteristics of responsibility: (1) he was the president and chief operating officer of AIR; (2) he signed checks on behalf of AIR; (3) he owned 50% of the stock of AIR in the first quarter of 1984, and all of the stock of AIR in the third quarter of 1984; and (4) he had control over and supervised AIR's daily operations. Thus, we conclude as a matter of law that House was a responsible person within the meaning of section 6672 during the first and third quarters of 1984.

 Once an individual is established as a "responsible person," he has the burden of disproving willfulness. *Smith*, 894 F.2d at 1553; *Thibodeau*, 828 F.2d at 1505. The Supreme Court has defined willfulness, as used in the criminal tax statutes, as the "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, —— U.S. ——, ——, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991). This court has held that the willfulness requirement of section 6672 is satisfied if the responsible person has knowledge of payments to other creditors after he becomes aware of the failure to remit the withheld taxes. *Smith*, 894 F.2d at 1553; *Thibodeau*, 828 F.2d at 1505. Willfulness, however, "does not require a fraudulent or other bad motive on the part of the responsible person." *Hewitt v. United States*, 377 F.2d 921, 924 (5th Cir. 1967). In the first and third quarters of 1984, House signed AIR's payroll checks even though he was aware that the withholding taxes were not paid. Thus, he preferred other creditors, the employees, to the government.

 In the first quarter of 1984, AIR's funds only covered its payroll expenses. However, "if a corporation has only sufficient cash to pay net wages, and does so, ... the responsible person[ ] nevertheless [is] liable for failure to collect withholding taxes...." *Mazo*, 591 F.2d at 1154. House testified that the withholding taxes for the third quarter of 1984 were not paid because AIR's bank account, and sole source of funds, was garnished by a creditor. This testimony does not affect the issue of House's willfulness. A responsible person's expectation that funds sufficient to pay the taxes will be available at the end of the tax quarter does not make

---

payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over....

**7.** A company may have more than one responsible person within the meaning of section 6672.

*Thibodeau*, 828 F.2d at 1503; *George*, 819 F.2d at 1011.

**8.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the failure to remit withholding taxes any less willful. *Thibodeau*, 828 F.2d at 1506. Thus, despite any efforts by House to collect and remit the taxes withheld from the wages of AIR's employees during the first and third quarters of 1984, his failure to do so was willful as a matter of law.

Under the circumstances in this case, binding legal principles and interpretations compel the result indicated above. The seeds of common sense compassion sown by the jury find scant hospitality on this rock hard legal landscape. Accordingly, we REVERSE and REMAND for entry of judgment notwithstanding the verdict in favor of the United States.

REVERSED and REMANDED.