**Kenneth Lee McDONALD,**
**Plaintiff–Counter–Defendant,**
**Appellee,**

v.

**UNITED STATES of America,**
**Defendant–Counter–Plaintiff,**
**Appellant.**

No. 90–7631.

United States Court of Appeals,
Eleventh Circuit.

Aug. 21, 1991.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., William A. Roberts, U.S. Dept. of Justice, Tax Div., Michael N. Wilcove, Harris Livingstain, Gary R. Allen, Chief, Appellate Section, Tax Div., Dept. of Justice, David M. Moore, Robert Pomerance, Brian Griffin, Tax Div., Dept. of Justice, Washington, D.C., for defendant counter-plaintiff-appellant.

John R. Benn, Florence, Ala., for plaintiff counter-defendant, appellee.

---

Before ANDERSON and DUBINA, Circuit Judges, and GIBSON *, Senior Circuit Judge.

PER CURIAM:

In this appeal, the United States seeks reversal of a judgment absolving appellee Kenneth McDonald from liability under § 6672 of the Internal Revenue Code for nonpayment of federal employment taxes from the wages of the employees of Environmental Protection Systems, Inc., a company that McDonald partially owned and of which he was president. The district court entered judgment in favor of McDonald on the basis of special interrogatory findings by a jury that although McDonald was responsible for the withholding and payment of the unpaid employment taxes, he had not "willfully" failed to pay them. The United States argues that the evidence presented at trial established that McDonald acted "willfully" as a matter of law and, therefore, that the district court erred in denying the government's motions for directed verdict and for judgment notwithstanding the verdict at the close of trial. We reverse the district court and remand for entry of judgment in favor of the United States.

## I. STATEMENT OF FACTS

Appellee Kenneth McDonald was president and one-third owner of Environmental Protection Systems ("EPS"), a Tennessee corporation formed in 1983 to perform onsite labor under a contract between the State of Alabama and Acoustical Installers, Inc. ("Acoustical"), an asbestos removal firm of which McDonald was also president and part owner. Although McDonald was president of EPS, Johnny Pitmon, the comptroller, handled the day-to-day administration of the company's finances.

In April of 1984, McDonald, acting as president of Acoustical and EPS, negotiated and executed a financing contract with First Alabama Bank of Athens, Alabama ("First Alabama").[1] Under the contract, First Alabama agreed to provide EPS with a $350,000 line of credit in exchange for security interests in all of EPS's accounts receivable, contract rights, inventory and chattel paper. The bank also required that any future payments from the State of Alabama to EPS be made payable jointly to Acoustical and First Alabama. The chief purpose of this line of credit was to provide short-term funding for EPS's operations until the company received payment for its work. The State of Alabama, for which EPS performed most of its work, was often slow to make payment, and the credit line enabled EPS to meets its operating expenses in the interim.

With respect to the withholding and payment of federal employment taxes, EPS's line of credit operated as follows. EPS had two accounts at First Alabama, one for general operating expenses and another for payroll. When EPS requested a "draw" from its line of credit, First Alabama deposited money into EPS's general operating account. If a payroll distribution was approaching, EPS issued two separate checks from its general operating account. EPS issued the first check in an amount equal to the net wages of all of its employees and deposited the check into the payroll account. Individual paychecks for each employee were then drawn from the payroll account. EPS issued the second check from the general operating account in an amount equal to the total federal employment taxes due from its payroll and deposited this check at First Alabama, an authorized federal depository for holding withheld employment taxes.

In July of 1984, First Alabama expressed concern that EPS was overextended and that its line of credit would not be repaid. The president of First Alabama notified McDonald and other officers of EPS that henceforth the bank would loan EPS only enough money to cover the company's

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Prior to April of 1984, EPS had an unsecured line of credit in the amount of $200,000 from First Alabama.

"net" payroll, that is, enough money to cover the employees' net wages but not the additional amount necessary to cover the withholding for their federal employment tax. First Alabama informed EPS that EPS would have to find another source for the funds to cover the payroll taxes. As a practical matter, however, EPS had little opportunity to locate other sources of credit because First Alabama held security interests in all of the company's contracts and income. Payments from customers to EPS were going directly to First Alabama, which applied the money to reduce EPS's outstanding debt.

Despite its problems, EPS remained in business, with First Alabama's approval, until late 1984. During this time, the company continued to pay wages to its employees for their work in completing projects already in progress. First Alabama either deposited money directly into EPS's payroll account or permitted EPS to overdraw its payroll account in amounts sufficient to pay the employees' net wages. Although EPS continued to issue checks on a weekly basis to cover its federal employment tax deposits, the bank declined to honor them. However, the bank honored other checks payable to creditors whose services were necessary to maintain EPS's operations.

Due to EPS's failure to pay its federal employment taxes, the IRS assessed a penalty against McDonald under I.R.C. § 6672 in the amount of $111,511.13, the total of the unpaid withholding taxes for the first, third and fourth quarters of 1984. McDonald paid a portion of this penalty and subsequently filed this action in federal district court contesting his liability and requesting a refund of the amount he had paid. The United States filed a counterclaim against McDonald for the unpaid portion of the penalty.

## II. COURSE OF PROCEEDINGS

This case was tried before a jury in federal district court. At trial, EPS comptroller Johnny Pitmon testified that the first period for which EPS failed to deposit its federal employment withholding taxes was the week of July 13, 1984. Pitmon testified that McDonald knew in July of 1984 that the withholding taxes were delinquent, that the company did not have the money to pay them, that the bank would not advance money for that purpose, and that EPS paid other creditors while the taxes remained unpaid. Gary Newby, a shareholder and officer of EPS, testified similarly regarding McDonald's awareness of the tax deficiency.

McDonald testified that had he learned of the tax delinquency in July of 1984 at a meeting between the president of First Alabama and the officers of EPS, including himself. He further testified that EPS had continued to pay wages to its employees after he had learned of the company's inability to pay its federal employment withholding tax, thereby becoming increasingly delinquent. McDonald asserted, however, that First Alabama, not EPS, was responsible for the company's payroll tax default because the bank controlled the company's funds and advanced only enough money to pay net wages. McDonald attempted to establish that the tax deficiency was not due to any action by EPS, but to the bank's selective decisions to refuse to honor the checks issued by EPS to pay federal employment taxes.

At the close of evidence, the United States moved for a directed verdict, arguing that the evidence had established as a matter of law that McDonald was a "responsible person" for the unpaid withholding taxes for the third and fourth quarters of 1984 and that his failure to pay was "willful." [2] The district court denied this motion.[3] The jury found through special

---

**2.** The government dropped its claim that McDonald had willfully failed to withhold and pay its federal employment taxes for the first quarter of 1984.

**3.** The government also argues that the district court erred in instructing the jury that First

Alabama's behavior toward EPS could establish a defense of reasonable cause to the government's allegation that McDonald's failure to pay was willful. Because we reverse this case on other grounds, we need not reach this issue.

interrogatories that McDonald was a "responsible person" with respect to EPS's nonpayment of federal withholding taxes but that he had not acted "willfully" in defaulting on the tax payments.[4] In accordance with those findings, the district court entered judgment in favor of McDonald, refunding to him the amount that he had already paid to the government and dismissing the government's counterclaim for the remaining balance of the § 6672 penalty. The district court subsequently denied the United States' motion for either judgment notwithstanding the verdict or a new trial. This appeal follows.

## III. DISCUSSION

The dispositive issue in this case is whether the government established as a matter of law that McDonald's failure to remit federal employment taxes was "willful" under § 6672.[5] The government argues that the district court erred in denying its motion for a judgment notwithstanding the verdict because the evidence at trial established that McDonald was aware that EPS had defaulted on its federal payroll taxes and that EPS nevertheless continued to operate and to pay other creditors while

the taxes remained unpaid. The government asserts that once McDonald's knowledge of these facts is proven, McDonald's failure to remit payroll taxes was "willful" as a matter of law. *See Smith v. United States*, 894 F.2d 1549, 1553 (11th Cir.1990).

McDonald's sole argument[6] is that his nonpayment of payroll taxes was not willful because First Alabama held complete control over EPS's money. In *Williams v. United States*, 931 F.2d 805 (11th Cir.1991), a recent panel of this court expressly rejected the same argument. Because the facts in *Williams* are so similar to those in this case, we find that we are bound to follow the result in *Williams*. Therefore, we hold that McDonald "willfully" failed to remit federal payroll taxes as a matter of law because he was aware that EPS had defaulted in its payment of employment taxes and nevertheless acquiesced in EPS's continued payment to other creditors while the taxes remained unpaid.

For the foregoing reasons, the judgment of the district court is reversed and this case is remanded for entry of a judgment notwithstanding the verdict in favor of the United States and against McDonald to reflect his liability for payroll taxes for the

---

**4.** The jury submitted the following answers, *inter alia*, to interrogatories:

With respect to the tax period involving the Third Quarter of 1984—

INTERROGATORY NO. 1:

Do you, the jury, find that Mr. McDonald was a person required to collect, truthfully account for, or pay over taxes to the government during the third taxable quarter of 1984? YES.

INTERROGATORY NO. 2:

Do you, the jury, find that Mr. McDonald acted willfully in failing to collect, truthfully account for or pay over taxes to the government during the third taxable quarter of 1984? NO.

INTERROGATORY NO. 4:

Do you, the jury, find that Mr. McDonald was a person required to collect, truthfully account for, or pay over taxes to the government during the fourth taxable quarter of 1984? YES.

INTERROGATORY NO. 5:

Do you, the jury, find that Mr. McDonald acted willfully in failing to collect, truthfully account for or pay over taxes to the govern-

ment during the fourth taxable quarter of 1984? NO.

**5.** In order to recover under § 6672(a), the government must establish that an individual was "responsible" for the unpaid taxes and that the individual willfully failed to pay them. The jury found by special interrogatory that McDonald was a "responsible person" under § 6672 for the withholding and payment of EPS's federal employment taxes. McDonald does not appeal this finding. Therefore, the only issue on appeal is whether he "willfully" failed to pay the taxes.

**6.** In brief, McDonald does argue that he was not aware until August, 1984, that the payroll taxes were not paid. However, as stated in the text, we conclude that he first learned in July, and that no reasonable jury could find otherwise. McDonald also makes a veiled argument that he is not liable because he did not sign the checks by which other creditors were preferred. However, the law is well established that delegation of such duties does not relieve a responsible person of liability.

third and fourth quarters of 1984.[7]

REVERSED and REMANDED.

---

7. At trial, the government dropped its allegation that McDonald was liable for unpaid employ- ment taxes during the first quarter of 1984.