Edward J. FINLEY, Plaintiff,

v.

UNITED STATES of America, Defendant,

v.

Floyd JOHNSON, Counterclaim
Defendant.

Civ. A. No. 91–1361–MLB.

United States District Court,
D. Kansas.

Dec. 15, 1993.

Craig W. West, Foulston & Siefkin, Wichita, KS, for plaintiff.

Carolyn D. Jones, Martin M. Shoemaker, Office of Special Litigation Tax Div., U.S. Dept. of Justice, Washington, DC, Craig W. West, Foulston & Siefkin, Wichita, KS, Joseph E. McKinney, Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on the government's motion for summary judgment. (Doc. 39)

The government seeks to collect withholding and FICA taxes owed to it by Halsey–Tevis, Inc. (Halsey) for the third and fourth quarters of 1988, in the amount of $144,876.48. The government determined that Edward Finley and Floyd Johnson were persons responsible for the payment of those taxes and made assessments against each of them. Johnson was the president, chairman of the board of directors, and a shareholder of Halsey during the relevant period at issue. Finley was the secretary-treasurer and a director. Both men were authorized to hire and fire employees and sign checks on Halsey's bank account. Finley was the bookkeeper and prepared tax forms and financial statements. He also computed payroll and payroll taxes, made tax deposits and signed payroll checks during the periods at issue.

Halsey's financial condition steadily worsened throughout 1988. On September 28, 1988, Halsey entered in a "grid note" arrangement with the First National Bank of Wichita (Bank) whereby the Bank obtained a security interest in almost all of Halsey's assets. During this period, Halsey deposited all of its receivables into a deposit account from which only the Bank could draw funds. Halsey operated under this grid note until October 31, 1988. Finley attempted to borrow additional sums in October, 1988, from the Bank to pay Halsey's payroll taxes, but the Bank refused. In November, 1988, the Bank took over Halsey's finances and controlled what funds could be advanced and what expenses could be paid. At Johnson's behest, Halsey filed a bankruptcy petition on December 21, 1988.

Finley paid the withholding tax on one employee of Halsey for the third and fourth quarters of 1988, then commenced this action for a refund. The government counterclaimed against Finley and Johnson for the balance due on the assessments.

## Standards for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Aldrich Enters., Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original). Once the moving party properly supports its motion, the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). The court reviews the evidence in a light most favorable to the non-moving party, *e.g., Thrasher v. B & B Chemical Co., Inc.,* 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

## Discussion

Employers are required to deduct and withhold federal income and FICA taxes from their employees' wages, which are held in trust for the United States. *Turpin v. United States,* 970 F.2d 1344, 1346–47 (4th Cir.1992). 26 U.S.C. § 6672 operates as device to recover withholding taxes an employer fails to pay to the government. In order for a person to be held liable under § 6672, two requirements must be satisfied: (1) the party assessed must be a person required to collect, truthfully account for, and pay over the tax, referred to as a "responsible person"; and (2) the responsible person must have willfully failed to insure that the withholding taxes were paid. *O'Connor v. United States,* 956 F.2d 48, 50 (4th Cir.1992).

## Responsible Person

The Tenth Circuit recently summarized the principles used to determine who is a "responsible person":

Courts have generally given broad interpretation to the term "responsible person" under section 6672. A person is responsible within the meaning of the statute if that person is required to collect, truthfully account for or pay over any taxes withheld from the wages of a company's employees. The responsible person generally is, but need not be, a managing officer or employee, and there may be more than one responsible person. Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees. Among other things, therefore, a corporate officer or employee is responsible if he or she has significant, though not necessarily exclusive, authority in the "general management and fiscal decision-making of the corporation."

*Denbo v. United States,* 988 F.2d 1029, 1032 (10th Cir.1993) (Citations omitted).

■ The government argues that Finley exercised significant authority to make financial decisions on behalf of Halsey. It points to the fact that Finley was a director and officer of Halsey, was authorized to and did in fact routinely sign checks, prepare financial reports, and was responsible for making tax deposits. Finley concedes these facts, but denies liability on the basis of what the Tenth Circuit has previously described as the "Nuremberg" defense. *Jay v. United States,* 865 F.2d 1175, 1177 (10th Cir.1989). The defense is that he merely acted at Johnson's direction. Finley concedes that he made the financial decisions of Halsey during the first half of 1988, but asserts that at some point during 1988 his financial control was taken away from him. When asked who took over at that point, Finley testified:

A: Well, as we began to fall behind, not only in taxes but with various suppliers, more and more I began to get calls from Mr. Johnson or Diane Parrish representing Mr. Johnson complaining that bills weren't paid and that they should be paid.

Finley argues that Johnson's control is evidenced by a specific instance in which Johnson allegedly ordered him to pay U.S. Gypsum rather than payroll taxes. Additionally, Finley contends that after September 29, 1988, the Bank's security interest in Halsey's assets prevented him from paying Halsey's tax obligations. Finley believed that if he did pay the payroll taxes, he may have been subjected to criminal liability for embezzlement.

Finley's evidence does not create any genuine issue of material fact. Finley's testimony, when taken in the light most favorable to him, may suggest that Johnson had the ability to override his decisions on certain financial matters. This fact does not diminish Finley's significant role in the financial affairs of Halsey. *Cf. Cline v. United States,* 997 F.2d 191, 196–97 (6th Cir.1993) ("otherwise responsible person does not lose that status even if instructed by superior officer not to pay taxes"). In addition to being an officer and director, he prepared tax forms and financial statements that were discussed at director's meetings. He had access to Halsey's bank account and could borrow money on its behalf. Finley concedes he was responsible for making the tax deposits during the period at issue. As the Tenth Circuit pointed out in *Denbo,* "Section 6672 does not confine liability for the unpaid taxes only to the single officer with the greatest or the closest control or authority over corporate affairs." *Denbo,* 988 F.2d at 1033. Rather, the test is whether Finley had "significant, as opposed to absolute, control of the corporation's finances." *Id.* The undisputed facts establish that he did have significant control.

Finley argues that *Jay v. United States, supra,* holds that issues such as those presented in this case should be resolved by a jury. In *Jay,* the taxpayer was the corporate comptroller of a corporation that defaulted on its tax obligations. Jay was neither an officer, director, nor shareholder, but he did possess checkwriting authority. The IRS assessed the amount of the unpaid taxes against the corporation's president and Jay, contending they were both responsible persons under § 6672. The record revealed that Jay was aware of the management's policy decisions, signed checks and paid creditors from the corporation's bank account, which account included funds withheld from employees' wages. The corporation's president gave Jay specific instructions on which major bills to pay. Jay contended he acted in reliance on the president's directions.

After reviewing case law from the Fifth, Sixth, and Eleventh Circuits, the court concluded that the government had not established its case as a matter of law. *Id.* 865 F.2d at 1179. The court found that Jay did not manage the day-to-day affairs of the corporation and did not serve as an officer. His authority to pay bills was limited by the corporation's president and the executive committee.

*Jay* is distinguishable from the case at bar. Unlike Jay, Finley was an officer and director of the corporation and had greater authority over its daily operations. There is no evidence that Johnson systematically exercised control over financial affairs to the degree present in *Jay.*

In the court's view, Finley's situation more closely resembles the facts of *Denbo*. In *Denbo*, Allred was the president and 50% shareholder of Louisiane Restaurant, Inc. He conducted the day-to-day management of the business and signed checks on the corporation's bank account. Denbo was a director, secretary-treasurer, and 50% shareholder of the corporation. Denbo had signature authority on the corporate bank accounts, but did not sign any checks on these accounts during the tax periods in question. Allred and Denbo met regularly throughout the corporation's troubled existence to discuss its financial plight. Denbo admitted he was aware of the corporation's pay tax delinquencies. Denbo relied on Allred's and the accountant's assurances that the taxes were being paid, despite knowing Allred's prior representations to that effect were false.

The jury found Denbo liable as a responsible person who willfully failed to pay the taxes. On appeal, Denbo argued that he was not a responsible person because Allred, not he, controlled the day-to-day operations of the corporation and made decisions concerning creditors and disbursement of funds. The court rejected Denbo's argument on the basis of the following evidence:

> He (Denbo) made arrangements for several bank loans and also made personal loans to the corporation "in order to keep things going." He held regular meetings with Allred and the accountants. And, while he did not exercise his authority to sign checks, he had such authority to sign checks, he had such authority from the beginning. These undisputed facts, along with Denbo's 50% stock ownership and status as an officer and director of the corporation, demonstrate that he possess "significant authority in the ... fiscal decisionmaking of the corporation."

*Denbo*, 988 F.2d at 1032.

Finley's control appears to be at least as great compared to what the Tenth Circuit deemed sufficient to support a finding that Denbo was a responsible person. Accordingly, the court finds that Finley is a responsible person under § 6672.

■ Johnson paints a widely divergent picture of who was responsible for the finan-cial control of Halsey than the picture presented by Finley. Johnson portrays himself as a financially naive person who completely relied upon Finley to manage the financial affairs of Halsey. Johnson alleges that he was totally unaware of the payroll tax problems prior to October, 1988. He does admit, however, that he saw financial statements that showed payroll tax liabilities prior to that date. He also acknowledges that he attended directors' meetings in 1988 in which Finley explained Halsey's financial statements.

The court finds Johnson's professed ignorance of Halsey's tax problems insufficient, when considered in light of the uncontroverted facts, to create a genuine dispute of material fact. Johnson was the president, chairman of the board of directors, and a shareholder of Halsey. He determined the salaries of Halsey's employees and had the authority to hire and fire. He personally guaranteed loans to Halsey and was authorized to sign checks on its behalf. He received financial statements and quarterly reports and attended directors' meetings in which Halsey's financial affairs were discussed. The fact that he may have relied on Finley to play a major role in the fiscal management of Halsey does not relieve Johnson of liability. *See Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir.1992).

Johnson places heavy reliance on *Stewart v. United States*, 19 Cl.Ct. 1 (1989), for the proposition that a person's titles do not necessarily indicate he or she has significant authority in the management and financial dealings of a corporation. In *Stewart*, a doctor, who was the sole shareholder, officer and director of a professional service corporation under Rhode Island law, was held not to be a responsible person under § 6672. The doctor had hired a business administrator with the caveat that she would have complete control over all business matters pertaining to the corporation. The court found the doctor had divorced himself from the business side of the emergency center, and that the administrator alone made administrative decisions for the corporation. *Id.* at 5.

The court agrees with Johnson's argument that the court's focus is on substance of the person's job responsibilities rather than on their titles. *O'Connor*, 956 F.2d at 51. The

court disagrees with Johnson's application of that principle to the facts of this case. In the court's view, Johnson had significant, though not exclusive, authority over the general management and financial affairs of Halsey. While he may not have had the education and financial acumen possessed by Finley, Johnson clearly exercised substantial authority, as is evidenced by his decision to have Halsey file a bankruptcy petition in December, 1988.

Johnson argues the Bank had a stranglehold on Halsey's assets after early November, 1988, and refused to allow Halsey to pay withholding taxes. In *Kalb v. United States,* 505 F.2d 506 (2nd Cir.1974), *cert. denied* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), the court addressed an analogous argument. The plaintiffs claimed that they were not responsible persons during the relevant period because the Bank controlled its finances and prevented it from paying withholding taxes. Plaintiffs conceded they granted the Bank this power as consideration for the Bank's continued financing. The court rejected the plaintiffs' argument and observed: "To permit corporate officers to escape liability under section 6672 by entering into agreements which prefer other creditors to the government would defeat the entire purpose of the statute." *Id.* at 510.

The facts of *Kalb* are indistinguishable from the case at bar, and the court reaches the same conclusion. While the Bank possessed considerable leverage over Halsey by virtue of its lending arrangement, neither Johnson nor Finley can delegate to the Bank their statutory responsibility to account for the withholding taxes or attempt to defeat their responsibility by contending that the Bank denied them leave to pay past-due taxes.

The court finds Johnson is a responsible person under § 6672.

*Willfulness*

■ Willfulness under § 6672 means a " 'voluntary, conscious and intentional decision to prefer other creditors over the government.' " *Denbo,* 988 F.2d at 1033. The requirement is met if the responsible person shows a " ' "reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." ' " *Id.* A re-

sponsible person's failure to investigate or to correct mismanagement after being notified that withholding taxes have not been paid satisfies the section 6672 willfulness requirement. *Id.* The responsible person has the burden to show that he did not willfully fail to remit taxes. *Muck v. United States,* 3 F.3d 1378, 1381 (10th Cir.1993) (Citation omitted).

■ Finley argues that the court should revise this definition of willfulness in light of the United States Supreme Court's decision in *United States v. Cheek,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), and hold that a good faith misunderstanding of the law or a good faith belief that one is not violating the law negates willfulness.

The Tenth Circuit unequivocally rejected the same argument in *Denbo.* The court agreed with the Seventh Circuit[1] that no basis existed for altering the definition of willfulness employed by all other jurisdictions and upheld the trial court's refusal to submit a *Cheek* instruction of willfulness to the jury. *Denbo,* 988 F.2d at 1034–35. This court is bound to follow the decisions of the Tenth Circuit and accordingly rejects Finley's argument.

■ Finley argues he did not act willfully because the Bank controlled Halsey's receivables and inventory, rendering him essentially helpless. Finley concedes that he was aware of the nonpayment of payroll taxes as early as July or August, 1988. Thereafter, he acquiesced in the continued payment to other creditors. A person who pays other creditors when he knows withholding taxes are due acts willfully. *United States v. Vespe,* 868 F.2d 1328, 1334 (3rd Cir.1989). Furthermore, Finley's argument that the Bank held complete control over Halsey's money is untenable. *See McDonald v. United States,* 939 F.2d 916, 919 (11th Cir.1991), *cert. denied* — U.S. —, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992). Finley's knowledge of the nonpayment of payroll taxes, when coupled with knowledge that other creditors were being paid, mandates a finding of willfulness.

■ Johnson argues he did not act willfully because he did not understand financial

---

1. *Domanus v. United States,* 961 F.2d 1323 (7th    Cir.1992).

statements. Johnson admits receiving financial statements in which the existence of unpaid withholding taxes was disclosed and further admits he attended directors' meetings during 1988 and asked questions about the financial statements. While conceding he was aware of Halsey's financial difficulties in 1988, Johnson contends he relied upon others, primarily Finley, to keep him appraised of particulars such as the withholding tax situation. Johnson denies any knowledge of the withholding tax problem prior to October, 1988. His purported inability to understand financial statements is corroborated by other members of Halsey's board of directors.

The court finds that a disputed issue of material fact exists with respect to whether Johnson acted willfully.

The government's motion (Doc. 39) for summary judgment is hereby granted as to Finley and denied as to Johnson. Any motions for reconsideration of this order shall be limited to 5 pages, including attachments and appendices.

IT IS SO ORDERED.