**In re Ronald D. NUTT, Debtor.**

**No. 00–6627–6BI.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Aug. 2, 2001.

R. Scott Shuker, Gronek & Latham, LLP, Orlando, FL, for debtor.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE OBJECTION TO ALLOWANCE OF THE INTERNAL REVENUE SERVICE'S CLAIM*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

### (Claim No. 3)

**THIS CASE** came on for hearing on May 2, 2001, upon Ronald D. Nutt's ("Nutt"), objection to allowance of claim (Claim No. 3) of Internal Revenue Service filed on January 24, 2001, (the "Objection") (Doc. No. 25). Upon consideration of the Objection and based upon the evidence presented by Nutt and the IRS, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On August 24, 2000, Nutt, the debtor herein, filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (the "Petition Date"); no trustee has been appointed.

2. The Internal Revenue Service (the "IRS") filed Claim No. 3 on November 15, 2000, in the amount of $248,862.03 (the "Claim"). The Claim consists of amounts allegedly owed by Nutt for unpaid trust fund recovery penalty liabilities for the periods ending December 31, 1995, with respect to the unpaid payroll taxes of Hallmark Builders, Inc. ("Hallmark"). Of this amount, $75,591.00 is listed as a secured claim, $173,259.03 is listed as an unsecured priority claim and $12.00 is listed as an unsecured general claim.

3. The trust fund recovery penalty was assessed against Nutt on April 13, 1998.

4. On January 24, 2001, Nutt filed the Objection based upon the following grounds: (1) Nutt was not a responsible party as defined under 26 U.S.C. § 6672; and (2) due to the IRS's breach of a settlement agreement entered into by and between Nutt, the IRS, and Hallmark, Nutt suffered damages in excess of the amount of the Claim.

5. The IRS contends that Nutt is liable for payment of the trust fund taxes of Hallmark for the period ending December 31, 1995, pursuant to 26 U.S.C. § 6672,

because Nutt was both: (1) "responsible" for ensuring that trust fund taxes were withheld from the wages of Hallmark's employees and paid over to the United States; and (2) "willfully" failed to do so.

6. Nutt formed Hallmark, a Florida corporation, in 1975. Throughout its history and until mid–1993, Hallmark was under the exclusive and direct management of Nutt. Nutt appointed John R. Conner ("Conner") as the president of Hallmark on or about December, 1993. Conner served as president of Hallmark until some time in May, 1995.

7. Hallmark failed to pay in full its employment taxes for the second, third, and fourth quarters of 1995.

8. Nutt stipulated that during the second, third, and fourth quarters of 1995 ("the period in issue") he qualified as a "responsible person" as that term is defined pursuant to 26 U.S.C. § 6672.

9. Nutt did not sign any payroll checks or 941 quarterly tax returns, did not direct payments to any creditor other than the IRS, nor did he participate in the daily accounting, management, or operation of Hallmark during the period in issue. Mike Storey, Roger A. Nutt, Andrew L. Nutt, Herminigildo A. Leyco, and Conner determined which creditors of Hallmark would be paid, and Roger A. Nutt or Herminigildo A. Leyco were the parties responsible for submitting the 941 quarterly tax returns and withholding employment taxes.

10. Betty Famularo, Roger Nutt's secretary, wrote two memorandums to Roger Nutt indicating that several payroll tax deposits were outstanding. One memorandum was written on August 8, 1995, and the other was written on October 6, 1995. (Doc. No. 41, IRS's Exhibit No. 8). Both memoranda indicate that Nutt received a carbon copy, but Nutt testified that he did not recall either memorandum. Nutt was not involved in the active management of Hallmark at the time the memoranda were drafted, and Nutt's testimony that he does not recall either memorandum is credible.

11. IRS Revenue Officer K. Kennedy ("Kennedy") visited Hallmark in order to collect its delinquent payroll taxes for the first quarter of 1995 on October 31, 1995, and received the 941 quarterly tax returns for the second and third quarters of 1995, which were signed by Roger A. Nutt. Kennedy indicated that once the second and third quarter 941 tax returns were processed she would contact Hallmark regarding payment.

12. Nutt did not have actual knowledge of any payroll tax delinquency until October 31, 1995.

13. Hallmark had no funds from which it could satisfy its 1995 first quarter withholding tax liabilities. Nutt loaned approximately $40,000.00 of his personal funds to Hallmark in order to pay the first quarter payroll taxes on November 1, 1995.

14. After satisfying the first quarter payroll tax delinquency, Nutt immediately: (i) set out to further reduce the amount of employees working for Hallmark; (ii) instructed Roger A. Nutt, the vice president of Financing, to audit the books and records of Hallmark so that the books would accurately reflect the company's financial condition; (iii) sought buyers for Hallmark; and (iv) remained current on all future accruing withholding tax liabilities.

15. Nutt stayed in contact with Kennedy and was advised that once the withholding tax liabilities were assessed for the second, third and fourth quarters, Hallmark and the IRS could work out a payment schedule. The second quarter withholding tax liability was assessed on

November 20, 1995. The third quarter withholding tax liability was assessed on November 1, 1995. The fourth quarter withholding tax liability was assessed on February 2, 1996.

16. After Nutt had actual knowledge of Hallmark's payroll tax delinquencies, Nutt used personal funds to pay Hallmark's first quarter payroll taxes, Hallmark remained current on its withholding taxes, and Nutt began negotiations with the IRS in order to establish a repayment schedule.

17. There were no unencumbered funds that could be used to satisfy the outstanding obligation to the IRS after Nutt obtained actual knowledge of the delinquencies on October 31, 1995. Any and all payments to lenders, suppliers, and subcontractors, were paid at closings and were not subject to the control of Nutt or Hallmark. The IRS did not offer any corporate checks payable to vendors which were signed by Nutt during the tax periods in question nor did the IRS produce any direct evidence that Nutt had actual knowledge of any creditor payments from otherwise unencumbered funds.

18. Hallmark filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida on February 23, 1996, and on January 21, 1997, Hallmark converted to a Chapter 7 case.

19. The IRS received proceeds from the Chapter 7 bankruptcy trustee for Hallmark of at least $56,835.68, which was derived from the sale of lots owned by Hallmark. The IRS applied the proceeds received from the Chapter 7 bankruptcy trustee to the non-trust fund portion of Hallmark's employment tax liability for the period in issue.

## CONCLUSIONS OF LAW

1. Internal Revenue Code Sections 26 U.S.C. 3102 and 3402 require that employ-ers withhold federal social security and income taxes from the wages of their employees. Withheld funds are referred to as "trust fund taxes" and are a "special fund in trust for the United States." 26 U.S.C. § 7501; *see also Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *Turpin v. United States,* 970 F.2d 1344, 1347 (4th Cir.1992); *Newsome v. United States,* 431 F.2d 742, 745 (5th Cir.1970); *Thomsen v. United States,* 887 F.2d 12, 14 (1st Cir.1989).

2. Employees are credited with having paid the taxes even where an employer withholds trust fund taxes but fails to pay them over to the United States. *See Slodov,* 436 U.S. at 243, 98 S.Ct. 1778; *see also Smith v. United States,* 894 F.2d 1549, 1552–53 (11th Cir.1990). Therefore, unless the United States has recourse against the persons responsible for the collection and nonpayment of the tax, revenues are lost. *See Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975); *see also Thomsen,* 887 F.2d at 17.

3. Internal Revenue Code Section 26 U.S.C. 6672(a) protects against such loss of revenue and provides that when a person required to collect and pay over withheld taxes willfully fails to do so, he is liable for a penalty equal to the amount of the unpaid taxes. Personal liability under Section 6672 is properly imposed upon the person or persons who: (1) were responsible for ensuring that the trust fund taxes were collected and accounted for or paid over to the United States; and (2) willfully failed to discharge that duty. 26 U.S.C. § 6672(a); *see e.g., Malloy v. United States,* 17 F.3d 329, 331 (11th Cir.1994); *Smith,* 894 F.2d at 1553; *Thibodeau v. United States,* 828 F.2d 1499, 1503–04 (11th Cir.1987); *Williams v. United States,* 931 F.2d 805, 809–10 (11th Cir. 1991). The government, as a matter of

policy, collects only the amount to which it is entitled by way of the tax. The government does not impose fees or penalties in addition to the unpaid assessment. *See In re Energy Resources Co.*, 871 F.2d 223, 232–33 (1st Cir.1989), *aff'd*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

4. Nutt has stipulated that for the second, third and fourth quarters of 1995 he qualifies as a "responsible person" as that term is defined in 26 U.S.C. § 6672.

■ 5. The burden of proving lack of willfulness is on the individual once it is established that the individual qualifies as a responsible person. *See Thibodeau*, 828 F.2d at 1505; *see also George v. United States*, 819 F.2d 1008, 1011; *Malloy*, 17 F.3d at 331.

■ 6. The question of whether a particular person willfully failed to carry out his responsibility of causing the corporation to collect or pay over the taxes depends upon the facts and circumstances of each case. *See Bauer v. United States*, 211 Ct.Cl. 276, 543 F.2d 142, 148 (1976).

■ 7. The term "willfully" is defined by prior cases as meaning, in general, a voluntary conscious, and intentional act, such as payment of other creditors in preference to the United States, although bad motive or evil intent need not be shown. *See Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir.1979).

■ 8. Section 6672 does not impose upon the responsible person an absolute duty to pay over amounts that should have been collected and withheld. The failure to collect and remit trust fund taxes must be willful. Liability is not imposed without personal fault. *See Slodov*, 436 U.S. at 254, 98 S.Ct. 1778.

■ 9. Willfulness may be demonstrated with a showing that the responsible person made the conscious and deliberate choice to pay other creditors instead of paying the Government. Payment of net wages (i.e., wages without the withholding tax) in circumstances where there are no available funds in excess of net wages from which to make withholding is a preference to other creditors constituting a willful failure to collect and pay over under Section 6672. *See Rother v. United States*, 567 F.Supp. 469, 499 (E.D.N.Y.1983). Under such circumstances, there exists an intentional act to prefer creditors holding wage claims over tax claims held by the United States. *See Sorenson*, 521 F.2d at 328.

■ 10. Absence of willfulness can be proved by an affirmative showing that the responsible person did not disregard his duties, and that he undertook all reasonable efforts to see that such taxes would be paid in circumstances where the employer had the means of payment and could reasonably be expected to make the payment. *See Feist v. United States*, 221 Ct.Cl. 531, 607 F.2d 954, 961 (1979).

11. The Court in *Feist* specifically rejected the government's position that willfulness is proved by simply showing that the responsible person knew the taxes were owing and did not immediately order their payment. The Court reasoned that this position ignores the surrounding relevant circumstances that must be examined when determining whether the failure to collect and pay over the taxes was willful. *Feist*, 607 F.2d at 962–63.

■ 12. Nutt has met his burden of proving that he did not willfully fail to collect and pay over trust fund taxes. The IRS has cited several cases from the Eleventh Circuit Court of Appeals and the former Fifth Circuit Court of Appeals in which responsible persons were found to have willfully failed to collect and remit taxes, however, this case is factually distinguishable from those cases.

13. In *Malloy v. United States*, 17 F.3d 329 (11th Cir.1994), Malloy, the responsible person, invested in a business knowing that the business had experienced financial difficulties and tax delinquencies. Malloy established a new business entity specifically to avoid any unknown liabilities of the former business entity. Malloy never asked whether trust fund taxes were being paid when financial difficulties arose in the new business despite knowing that the same employees who were responsible for paying the new businesses taxes were also responsible for paying the former businesses taxes. Malloy was found to have been on notice of an obvious risk of nonpayment of the new businesses trust fund taxes when the IRS investigated the former businesses nonpayment of it's fourth quarter taxes for the prior year and Malloy continued to pay other creditors for several months after the IRS investigation.

14. Hallmark was under Nutt's exclusive control from 1975 until the middle of 1993 and all taxes were timely paid when Nutt was actively involved in Hallmark's operations. Hallmark did not fail to timely pay its trust fund taxes until approximately one year after Nutt appointed Conner as Hallmark's president in charge of operations. Nutt obtained actual knowledge of the delinquency on October 31, 1995, during the IRS's investigation. Nutt took immediate action to see that the back taxes would be paid and Hallmark remained current on all future withholding taxes. Thus, this case is distinguishable from the Eleventh Circuit's decision in *Malloy*.

15. In *Williams v. United States*, 931 F.2d 805 (11th Cir.1991), the responsible person was found to have willfully failed to collect and pay over withholding taxes where the person issued checks to the IRS on a corporate bank account that the bank, a secured creditor, periodically "swept."

The bank applied the swept funds to the reduction of the corporation's debt and to honor checks written to the corporation's employees instead of applying the swept funds to checks written to the IRS for withholding payments. Willfulness was similarly established in *McDonald v. United States*, 939 F.2d 916 (11th Cir.1991), in which the responsible person wrote checks knowing that the businesses trust fund taxes were delinquent, the businesses line of credit with the bank was overdrawn, and the bank selectively honored checks written to some, but not all, creditors and the IRS was among the creditors whose checks were not honored.

16. This case is distinguishable from the Eleventh Circuit's decisions in *Williams* and *McDonald*. In *Williams*, the responsible person issued checks to the IRS on an account the responsible person knew was garnished and periodically emptied by a secured creditor. *Williams*, 931 F.2d at 807–08. In *McDonald*, the responsible person issued checks to the IRS on an overdrawn account. *McDonald*, 939 F.2d at 917–18. A responsible person knowingly issued checks to the IRS and to other creditors when insufficient funds existed to cover all of the outstanding checks in both cases.

17. There is, at the very least, a substantial likelihood that some checks will not be honored when checks are issued on accounts containing insufficient funds to cover all of the checks. In *Williams* and *McDonald* the responsible person was aware of this likelihood. Nutt was not aware that certain creditors may have been preferred to the IRS because he did not write any checks during the period in issue and was not involved in the day-to-day operations of Hallmark.

18. In *Smith v. United States* 894 F.2d 1549 (11th Cir.1990), the responsible person failed to disprove willfulness where the

person paid employees after learning of the corporation's failure to remit trust fund taxes. Additionally, the responsible person was found to have recklessly disregarded an obvious risk that the IRS would not receive trust fund taxes to which it was entitled when the person initially refused to listen to the comptroller's pleas to look into the corporation's financial problems.

19. In *Hornsby v. Internal Revenue Service*, 588 F.2d 952 (5th Cir.1979), the responsible person was held liable for willful failure to remit withheld trust fund taxes where the person knew of the requirement to make withholding payments and was the only person authorized to sign corporate checks.

20. In *Mazo v. United States*, 591 F.2d 1151 (5th Cir.1979), the responsible persons acted willfully where they had authority over corporate expenditures and paid other creditors with unencumbered funds in preference to the IRS after learning that the corporation failed to pay withholding taxes.

21. Finally, in *Newsome v. United States*, 431 F.2d 742, 749 (5th Cir.1970), willfulness was established where Newsome, the responsible person, paid other creditors after learning that insufficient funds were available to remit withheld trust fund taxes.

22. Nutt did not ignore any pleas to investigate Hallmark's financial situation. Indeed, it was represented to Nutt that Hallmark's finances were stable and Nutt's reliance on the representation was reasonable. Nutt did not pay other creditors in preference to the IRS when Nutt learned of Hallmark's delinquent withholding taxes. Hallmark had no unencumbered funds available to remit to the IRS, so Nutt paid the first quarter taxes with personal funds. Nutt also entered negotiations for repayment with the IRS. Therefore, *Smith*,

*Mazo*, *Hornsby*, and *Newsome* are distinguishable.

23. This case is similar to two cases in which courts have found that responsible persons did not act willfully. In *In re Macagnone*, 253 B.R. 99 (M.D.Fla.2000), the critical issue was whether Macagnone, the responsible person and company president, showed a reckless disregard for a known or obvious risk by failing to determine whether withholding taxes were remitted to the IRS after the company began to founder. *Macagnone*, 253 B.R. at 102. The company president had check signing authority and never inquired as to whether the taxes were paid. *Id.* at 100–01. However, the company had *no* history of tax delinquency and, therefore, the Court found that Macagnone's failure to inquire about the status of the taxes did not equal reckless disregard. *Id.* at 102.

24. In *In re Abel*, 200 B.R. 816 (E.D.Pa.1996), the District Court for the Eastern District of Pennsylvania reversed a bankruptcy court's finding that Abel, the responsible person, acted willfully. The District Court based its decision largely on the fact that Abel had no reason to know of any tax deficiencies and had little immediate responsibility for the company's finances and taxes. *Abel*, 200 B.R. at 825. The Court noted that "if a taxpayer has knowledge of past tax problems, or has reason to believe that the person in charge of paying the taxes is not trustworthy, his actions rise to the level of recklessness more quickly when the company experiences financial problems, or other warning signs arise that suggest unpaid tax liability." *Id.* at 824 (citations omitted).

25. Similar to *Macagnone* and *Abel*, there was no history of financial problems or tax delinquencies that could have alerted Nutt to Hallmark's tax delinquencies during the period in issue. In *Abel*, the responsible person exercised "little imme-

diate responsibility" with regard to the daily financial aspects of the business. *Abel*, 200 B.R. at 825. The same is true in this case. Nutt had no reason to believe Hallmark's taxes were not current.

26. Nutt had no actual knowledge of Hallmark's delinquent payroll taxes until Kennedy visited Hallmark on October 31, 1995. Nutt did not recklessly disregard a known or obvious risk that payroll taxes were not being remitted during the period in issue when either Roger A. Nutt or Herminigildo Leyco was responsible for preparing Hallmark's quarterly tax returns.

27. The Supreme Court in *Slodov* acknowledged that, with respect to employment taxes withheld but not paid, "[a]fter assessment, notice, and demand, the IRS may... create a lien upon the property of the employer, § 6321, and levy, distrain, and sell the employer's property in satisfaction of §§ 6331 to 6344 (1970 ed. and Supp V)." *Slodov*, 436 U.S. at 244, 98 S.Ct. 1778. The *Slodov* Court also noted that when an immediate filing for bankruptcy means a total loss, the Government understandably does not discourage a corporation from continuing to operate so long as current taxes are paid. *Slodov*, 436 U.S. at 253, 98 S.Ct. 1778. Permitting a business to continue operations could maximize the government's chance for recovery. It is equally true, however, that "the government cannot be made an unwilling partner in a business experiencing financial difficulties." *Thibodeau v. United States*, 828 F.2d 1499 (11th Cir.1987).

28. The IRS and Nutt began negotiating terms of repayment. The IRS did not pursue collection remedies pursuant to § 6321, and § 6331 to § 6344, nor did the IRS discourage Nutt from continuing Hallmark's operation.

29. Nutt did not knowingly sit silent or prefer other creditors, but instead did all he could reasonably do in the circumstances to see that the taxes were paid upon learning of the deficiency. The IRS has asserted that once Nutt learned of the outstanding payroll tax liability, he was under an obligation to cure the deficiency or "close the doors" of Hallmark, and a failure to do so constitutes "willfulness." However, the Supreme Court and the Court of Claims have rejected this position and have instead articulated a "totality of the circumstances" test for proving lack of willfulness.

30. The totality of the circumstances indicate that Nutt acted in good faith in regard to the trust fund taxes. Nutt immediately paid the first quarter payroll taxes with his personal funds, contacted the IRS regarding a repayment schedule for the second, third and fourth quarters, remained current on the accruing payroll taxes after October 31, 1995, and made no payments to other creditors from unencumbered funds upon learning of the unpaid payroll taxes.

31. The Debtor's objection to Claim No. 3 of the IRS in the amount of $248,862.03 is due to be sustained.